The opinion of the court was delivered by
Bkejaux, J.
Plaintiffs brought this action to recover the sum of two thousand two hundred and forty-six dollars and seventy-one cents and interest, they claim as due by the defendants, who are, they allege commercial partners.
They aver that it was for goods and merchandise sold by them to the defendants.
They declared upon an account and alleged in their petition, that in recognition of their indebtedness the defendants had furnished them with a number of notes, maturing at intervals of thirty days, which remain unpaid.
One of the defendants, George B. Ittman, had been interdicted at the date suit was brought. His curator was cited as party defendant.
After, suit had been instituted, this defendant died. His daughter, as testamentary executrix of his estate, was made defendant.
Each defendant pleaded a general denial. They separated in their defence.
No evidence was offered by the executrix.
The other defendant defended on the ground that he was not a partner, and offered evidence to prove that he was not responsible for the debts, as he was not, he contended, a member of the firm sued.■
The 'testimony discloses that in January, 1881, the two brothers, George B. and Jacob, formed a partnership to end on October 31, 1882. It was not expressly renewed at the end of the term stipulated.
*892 The style of the firm under the contract of partnership was George B. Ittman, and the plaintiffs contend that the partnership continued by tacit reconduction, and that the goods, the price of which they sue for, were sold to a commercial firm of which George B. Ittman and Jacob Ittman were partners; that they were used by the firm in operating a barroom.
In the formal articles of partnership, it is stated that Jacob was the owner of one-half of the interest in the business, stock, fixtures, and appurtenances.
He put in the concern an amount stated, and thereby acquired a half interest.
The records do uot show that there ever was a final settlement made between the partners, and that the firm was dissolved at the time for its dissolution stipulated in the written agreement of partnership.
The business was conducted during all the years succeeding the stipulated term of the partnership as it had been conducted originally under the formal contract.
The prominent facts showing the continuance of the partnership are, that the property in which the partnership business was conducted was leased by the partners jointly.
That in a matter of bank accommodation Jacob Ittman represented himself as one of the partners, and as a partner obtained an extension of time for payment; that the debits and credits of the partnership accounts were kept, as they had been kept under the formal articles of partnership, and that Jacob Ittman received his portion as a partner; that he on different occasions acknowledged his interest as a partner.
After the sickness of his brother in 1892, he had entire charge of the business, to the date of his brother’s interdiction in June, 1893.
All the testimony, except his own, shows that his management was that of a partner.
His statement regarding the character of his management is not only contradicted by witnesses, but is inconsistent with the history of the business, as made manifest by the books of the firm.
The evidence of plaintiffs consists of their accounts sued on, and the notes signed by the defendant firm.
They also offered the interdiction proceedings in the snit in which one of the defendants was interdicted.
*893 The note of evidence was closed, and after argument of counsel for both plaintiffs and defendants, the case was taken under advisement by the court.
While it was under advisement, the executrix filed a supplemental and amended answer and peremptory exception, in which she alleged, in substance, that plaintiffs could not recover on their accounts, for they held notes which had been introduced in evidence, and that these notes had been signed by the late George B. Ittman, after he had become notoriously insane; also that he was thus affected at the times (previous to the execution of the notes operating an acknowledgment) the goods, described in the open accounts, were sold and delivered.
On plaintiff’s motion, averring that it was not a peremptory exception, but an amended and supplemental answer, it was treated as of no effect and excluded from the' record. The District Court pronounced judgment for the plaintiffs and against both defendants in solido.
From the judgment both defendants have appealed.
BILL OP EXCEPTION.
The defendant Jacob Ittman, through his counsel, argues that the notes were signed by George B. Ittmann, and that there is no allegation that they were taken in error, that the suit was brought against the defendants as commercial partners.
He invites attention to the fact that, at the opening of the case he interposed the objection that, upon the face of the papers, it was an attempt to hold the defendant Jacob Ittman for another person’s debt, and that the open account had been novated. That this objection was overruled and a bill reserved.
Had the evidence supported the contention that Jacob Ittman was not a partner and that he was only an employé, the points urged would be unanswerable. The testimony leaves that theory of the defence unsustained by the facts. There was no error committed in admitting the testimony offered to prove that a partnership existed, and in not sustaining the plea of novation urged as an objection to the admissibility of the testimony.
THE EXISTENCE OP THE PARTNERSHIP.
At the risk of some repetition, we resume a statement of the facts regarding the partnership, as follows:
*894 There was a partnership originally in the name of George B. Ittman.
This is undisputed.
The property belonged to the partners in equal shares.
There was no settlement of the partnership. .
The partner Jacob Ittman obtained extension of time for payment of partnership debts.
Those near him, occupying desks in one of the apartments occupied in conducting defendants’ business, looked upon him as a partner, because of his active management and control of the business.
He has actively and interestedly attended to the business of the partnership. He has drawn amounts from the partnership funds, not consistent with his statement that he was an employé.
His signature in one of the books.in evidence, together with that of his brother and copartner, at the end of the statements of amount received, indicate, not a receipt for wages, but an agreement between partners as to amounts received by one of them from the partnership funds.
MAY HAVE BEEN UNKNOWN AS A PARTNER AND YET RESPONSIBLE.
With reference to the knowledge of the creditors.
The responsibility of a partner may exist, though it was not known by the creditor that he was a member of the partnership.
Whenever the parties intend a partnership between themselves, they are, or at least may be held to be, partners as to third persons. Story on Partnership, Sec. 49.
The existence of a dormant partner may be unknown to the creditor, and yet he may be held liable to the extent of his responsibility as a partner. Lindley on Partnership, Vol. 1, p. 339.
The secret partner can escape liability only by the failure of the creditors to discover the relation he holds to the business. Chaffraix & Agar vs. Lafitte & Co., 30 An. 631.
Commercial partners are bound in solido. They were commercial partners and bound for the payment of the debt.
AN ANSWER INVOLVING ISSUE OR EAOTS RILED TOO LATE TO BE CONSIDERED.
The other defendant, the executrix, could not be heard to raise an issue of fact after the case had been argued and submitted for decision.
*895 The question of insanity, vel non, of the late George B. Ittman at the time the debt" was contracted, was purely one of fact, and if the executrix desired to avail herself of that defence, it should have been seasonably presented.
But she contends that the record in the interdiction proceeding, introduced in evidence by plaintiffs without limitation, established more than the mere fact of interdiction and the appointment of a curator.
This manifestly was the purpose of plaintiffs in introducing this record.
The omitted limitation of the effect it should have is seized upon by the defendant as cause sufficient to enable her, some time after argument, to plead the absolute incapacity of the defendant at the dates the purchases were made.
We are compelled to decline all consideration of an exception tendered, going to the merits of the cause, on an issue of fact. It was really an answer. C. P. 419, 420; Boagni vs. Anderson, 32 An. 920; Cohn & Bruen vs. Levy, 14 An. 355; Guilbeau vs. Thibodeau, 30 An. 1099.
THE PLEA IS CONSIDERED UNDER THE GENERAL ISSUE.
This conclusion, however, does not exclude all consideration of the defence presented.
Had the plaintiffs, while proving their claim against this defendant, proved that he was notoriously insane, the executrix would have a right, under her plea, originally interposed, of general denial, to a judgment of non-suit.
THE EVIDENCE DOES NOT PROVE INSANITY AT THE TIME.
There is no proof of record that he was notoriously insane at the dates that the goods were sold to the defendant firm.
He became ill in October, 1892, and from that time his family seriously considered his mental condition.
It was only a short time prior to his interdiction that his mental condition became generally known.
THERE WAS NO NOTORIOUS CAUSE FOR INTERDICTION, NOR WAS IT PROVED THAT PLAINTIFFS KNEW OF ANY ABERRATION OF MIND.
It is announced in French jurisprudence, that acts anterior to the interdiction may be annulled, if there was notorious cause for in *896 terdiction at their date. Cass., 11th of March, 1862, S. 63, T. 136, pp. 63, 634.
Proof of a notorious cause for interdiction must be made, in order to defeat payment of goods purchased at their value in due course of trade. Laurent, Yol. 5, p. 376."
In the two cases cited by counsel for the defendant (Fecel vs. Guinault, 32 An. 91; Lagay vs. Marston, 32 An. 170) the insanity was evident and the causes for interdiction well known to those who were parties to the contract annulled.
The records disclose an entirely different state of facts in the case at bar.
The mental condition of the sadly afflicted man was, so far as appears of record, a cause of concern and sorrow to the family, becomingly undivulged, until secrecy was no longer possible.
PRICE OF GOODS NOT ALLOWED, PURCHASED FOR BUSINESS, AFTER CREDITOR WAS AWARE OF INSANITY, ONCE CAUSE FOR INTERDICTION HAD BECOME WELL KNOWN.
The defendant, in argument, urges that plaintiffs sued on the notes they hold and not on their account. The fact is, that they declared on their account; that without defence or objection on that score, they proved the correctness of the account, and used the notes in corroboration of its correctness.
Had they brought action on the notes they would not have recovered, for the drawer was notoriously insane on the first day of June, 1893, the date they were made.
The insanity of George B. Ittman was notorious on the first day of June, 1893, and the fact known to the plaintiffs on that day.
The price of the goods sold to him and charged to his account on that, and days subsequent, can not, under the law, be recovered, and to that extent the judgment must be canceled, in so far as he is concerned.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by deducting the sum of ninety-eight dollars and forty-six cents from the amount of twenty-two hundred and forty-six dollars and seventy-one cents the executrix was condemned to pay, and that in all other respects it be affirmed, with costs of appeal to be paid by the plaintiffs and appellees, and those of the lower court as directed in the decree.