TERM OF 1900-1901. 685

State et al. vs. N. O. City and Lake R. R. Co.

## No. 13,256.

STATE OF LOUISIANA ET AL., VS. NEW ORLEANS, CITY & LAKE RAILROAD COMPANY.

### SYLLABUS. ·

1. Full and specific notice having been given, by means of a written instrument, filed in the office of the Secretary of State, that the defendant's author claimed to be the transferree of a grant, made by legislative enactment, authorizing the construction of a railway on certain public lands, and the free use of said lands for that purpose ; and the road having been, thereafter, constructed agreeably to such notice ; and having been operated for twenty-three years, and no demand having been made, during that time, for compensation for the use of said land, or notice given of any intention to make such demand ; and no time having been afforded to the defendant to remove from the property, the State is estopped in an action to recover a stipulated amount, per annum, for the period during which defendant has exercised, or may exercise, the right of way in question.

2. Act 84 of 1882, authorizing the building and maintenance of railroads through public lands, is a declaration of the public policy of the State on that subject, and is so far applicable to a road in existence at the time of its adoption as to prevent a recovery, by the State, for the use of the right of way, in the absence of additional legislation authorizing the demand.

3. The legislature has sanctioned the building of a railroad on the bank of the New Canal, but should it appear, in a proceeding properly brought, that the road so built is maintained and operated in such a manner as to interfere with the effective administration and use of the canal the matter would be a proper subject for judicial inquiry.

#### ON REHEARING.

1. Although the rights under a legislative charter may not be complete because of non-acceptance in the manner required, and although the defendant road may not have, in manner required,· availed itself of the statute authorizing consolidation of corporations, yet it is not possible, under the law, for the State to obtain judgment which would have the effect of treating defendant as a mere trespasser owing rent to the New Basin Canal Company.

2. Legislation has given special sanction to the improvements made and clearly shows that it was never the intention to require the defendant to pay rental for the many years for which rental is claimed by the New Basin Canal Company.

3. Without reference to the pleas of estoppel and prescription, as a matter of express legislative intent regarding the defendant, the New Basin Canal Company is not the creditor of the defendant for the rental.

4. Whatever right the State has to sue for exclusive possession and occupancy of the strip of ground in controversy is, as it was in the former opinion, reserved.

APPEAL from the Civil District Court, Parish of Orleans— *Ellis, J.*

*Milton J. Cunningham,* Attorney General; *Walter Guion,* Attorney General, (*Branch K. Miller,* of counsel) for Plaintiff, Appellant.

*Denegre, Blair & Denegre* for Defendant, Appellee.

On the application for rehearing by BREAUX, J.

The opinion of the court was delivered by

MONROE, J.    This is a suit brought by the Attorney General, and associate counsel, in the name of the State of Louisiana and of the "Board of Control of the New Basin, Canal & Shell Road," to recover from the defendant seventy-seven thousand six hundred and seventy-five dollars, as the aggregate amount alleged to be due for the use and occupancy, from January, 1876, to January, 1899, of certain property, on the north side of the New Canal extending from the Metairie Road to the Lake, for the purposes of a railroad bed and track, being (as supposed) at the rate of three thousand three hundred and seventy-five dollars a year, interest being also claimed on the amounts alleged to have become due annually, from the expiration of each year; and the allegations of the petition being that the property in question belongs to the State and is in the charge of the "Board of Control," etc., which is authorized to represent the State with respect thereto, and that the defendant, and other companies, to whose rights and obligations it has succeeded, have been occupying the same, during the time mentioned, without right, and without making compensation for such occupancy. The prayer of the petition is for judgment in favor of the "Board of Control of the New Basin, Canal & Shell Road," for the amount claimed, as past due, and for three thousand three hundred and seventy-five dollars, with interest for each year, beginning with January 1, 1899, during which the defendant may continue to occupy said property.

To this the defendant makes answer, in substance, as follows:    That upon January 9, 1883, it acquired for a valuable consideration, the property and franchise of the New Orleans City Railroad Company, including the right of way over the property in question, which it has ever since peaceably and uninterruptedly enjoyed and exercised; that prior to that time, in April, 1876, its said transferror had constructed a road bed and double track upon the property in controversy, and had used the same peacefully and uninterruptedly up to the time of said transfer in 1883, under, and by virtue of the franchise, granted by

Act No. 133 of 1869, to the "New Orleans, Metairie, and Lake Railroad Company," of which it had become the owner; and that, by reason of the conduct and acquiescence of the plaintiff and the lapse of time, the plaintiff is now estopped to object to defendant's exercise of the rights thus acquired, and upon the faith of which it has made heavy expenditures and issued bonds to a large amount. Defendant denies that plaintiff has ever had any authority to lease any part of the canal or its appurtenances, or that it is entitled to recover rent or compensation, as claimed in the petition, and further denies that it has any title to the ground upon which the railroad of the defendant is built, or that said ground is necessary for the purposes of the canal, and it alleges that said road is an advantage to the canal, and that its continuance and operation are authorized, not only by the State, but also by the city of New Orleans.

The following facts are established:

By Act No. 18, of 1831, the General Assembly incorporated the "New Orleans Canal and Banking Company," and authorized it to construct a canal, with a shell road on each side, from the city of New Orleans to Lake Pontchartrain, and to charge tolls for the use of the same, and, for that purpose, to expropriate, or otherwise acquire, the necessary land, subject to the condition that, at the expiration of thirty-five years, the property should revert to the State. The canal was constructed, accordingly, with a shell road on one side, while what is called the North Side, or at least that portion of it which lies between the Metairie Road and the Lake, was left in its natural state,—that of a swamp. Agreeably to the terms of the statute, at the expiration of the thirty-five years, to-wit, in 1866, the canal and its appurtenances reverted to the State, and it was leased, under the authority of Act No. 12, of 1866, for fifteen years, to Richard Taylor. Thereafter, by the Constitutions of 1879 and 1898, the State was, and is, prohibited from further leasing or alienating said property.

By Act No. 133 of 1869, the General Assembly incorporated the "New Orleans, Metairie and Lake Railroad Company," for the purpose of building a railroad from New Orleans to Lake Pontchartrain, "with the privilege of constructing the same, or any portion thereof, on the public land, north of, or adjoining the New Canal, or forming part of the levee of said canal," and made it the duty of the lessee "to afford every facility for the construction of" said railroad, which, by the terms of the act, was to be so constructed as to "add to the efficiency of said levee."

The charter thus granted was accepted, by notarial act, by John G. Campbell, one of the original grantees, acting for himself and as transferree of two of the others, and by E. S. Wurzburger, Alfred Shaw, and George H. Braughn, as transferrees of the other of said original grantees; and, a few days afterward said parties entered into a contract with Taylor, the lessee, concerning his rights in the premises, after which, the evidence tends to show that, in June, 1870, several hundred shares of stock were subscribed in said company, and that, in July of the same year, a board of directors was elected.

It appears, also, that there was, then, in existence, a corporation, known as the "New Orleans City Railroad Company," which, for some fourteen years, or more, had been operating certain street railroad lines, and among them, a line from the heart of the city to the junction of Canal street and Metairie Road, the point designated as the city terminus of the New Orleans, Metairie and Lake Railroad. And, the next thing bearing upon the question at issue, disclosed by the evidence, is a contract, purporting to have been entered into, December 21. 1875, between the President and Directors of the two companies, respectively, which is termed "Articles of Consolidation," and which purports to consolidate the said corporations, under the authority of Act 157 of 1874. By the terms of this contract, the New Orleans City Railroad Company, having an authorized capital of two million dollars, of which one million three hundred thousand dollars had been subscribed, agreed to issue one thousand shares of its stock, at one hundred dollars each. of which eighty shares were to be considered full paid, and the remaining nine hundred and twenty shares were to be, thereafter, subscribed as the Board of Directors might determine; and the eighty shares mentioned were to be given to the stockholders in the New Orleans, Metairie and Lake Railroad Company, as "full payment and satisfaction for all the rights, property and franchises of said company." It also appears, from said contract, that E. S. Wurzburger, who signed the same, as representing the New Orleans, Metairie and Lake Railroad Company, owned, or controlled, all of the full paid stock, being 646 shares, and 331, out of the 499, shares of the stock of said New Orleans, Metairie and Lake Railroad Company, which had been subscribed, and for the subscriptions for which notes had been given, representing five per cent. thereof, payable on condition that two thousand shares should be subscribed. The contract further provided that the said company should bear the name of the New Orleans City Railroad Company; that all the officers of said New Orleans City Railroad Company should remain

as they were, and that its charter and by-laws should remain undisturbed, in so far as not altered by said contract.

This contract was ratified by the stockholders of the New Orleans City Railroad Company, and, together with a *proces verbal* of said ratification, was filed in the office of the Secretary of State, January 24, 1876.

In April, 1876, the New Orleans City Railroad Company began the construction of the road, as contemplated by the grant to the New Orleans, Metairie and Lake Railroad Company, pushed the same to completion, and, thereafter, maintained and operated it, and, in December, 1879, mortgaged it, together with all the property and franchises owned by said company, in order to secure seven hundred thousand dollars worth of bonds, issued for its purpose. Thereafter, to-wit, June 9, 1883, the New Orleans City Railroad Company assigned and transferred its rights and franchises, including those in question, to a corporation called the "New Orleans City and Lake Railroad Company," which, in 1893, mortgaged the same, with other property, for three million dollars, is now in possession thereof, and is the present defendant.

In the meanwhile, some years after the expiration of Taylor's lease, the General Assembly, in 1888, passed an act, No. 144 of 1888, placing the Canal, Shell Road, etc., under the control of a board of officers, to be appointed by the Governor; and the board so appointed has been administering the property since that time.

In the meanwhile, also, in 1882, the General Assembly passed an act, No. 84, of 1882, which reads: "That any person, company or corporation, desiring to build or extend a railroad in this State, shall have the right of way, not exceeding two hundred feet in width, over any land belonging to the State through which such road or any branch, tap, or extension thereof may pass, for the purpose of constructing, maintaining and running any railroad, or any tap, branch, or extension thereof, which may hereafter be built in this State."

The evidence shows that the defendant's road bed is within 120 feet of the border of the canal. Upon the other hand, there is no proof of the value of the right of way, other than the fact, which is established, that the defendant pays three hundred dollars per annum for its occupancy of a strip of land, belonging to the Firemen's Charitable Association, adjacent to Canal street, and, as we understand it, on the outer limit of the 120 feet which is nearest to the canal, which strip represents one-eleventh of the whole distance from Canal street to the

690 SUPREME COURT OF LOUISIANA,

State et al. vs. N. O. City and Lake R. R. Co.

lake; the argument being, that the defendant should pay in the same proportion for the other ten-elevenths of the distance.

## OPINION.

This suit was brought in February, 1899, and, considering the allegations and prayer of the petition, the only question which we are called upon to decide is, whether there should be judgment in favor of the Board of Control of the canal, condemning the defendant to pay for the use of the right of way in question, for the twenty-three years, preceding January 1, 1899, at the rate of three thousand three hundred and seventy-five dollars a year, and at the same rate, subsequent to that date, whilst it continues to use the property, together with the interest, as claimed in the petition.

We have seen that, in 1869, the State granted the right of way in question to a certain artificial person, which it undertook to create, at that time, and to designate as its grantee; that, in 1875, the person so designated, whether acting within the scope of the authority conferred upon it or not, for a valuable consideration, and by means of an agreement, which the parties called "Articles of Consolidation," conveyed, transferred and assigned the said right of way to another juridical personage, the legality of whose existence is not questioned; that, before any further action was taken, the State was formally notified of what had been done, and was apprized, not only of the fact that its grantee had transferred all the rights granted, including the free use of the land in question, but was informed of the manner of the transfer, and the consideration therefor, by the filing, in the office of the Secretary of State, in January, 1876, of a copy of the instrument by which the said transfer was effected; that, thereafter, in April, 1876, the transferree entered into possession of the property with the assent and co-operation of the lessee, holding under the authority of the State, and expended its money in carrying out the purpose which the State had in view in the adoption of the act of 1869, and which purpose, the State had been informed, would be carried out by the transferree, and not by the original grantee; that the transferree continued in peaceable and uninterrupted enjoyment of the said right of way, after the property passed out of the hands of the State's lessee, and under the immediate administration of the State itself, which administration was exercised at a later date, and has been exercised, since 1888, by the present plaintiff, the Board of Control, composed of officers appointed by the Gover-

nor; and that, in 1883, the transferree, who had thus been in possession for seven years, claiming under a title from the State, of which the State had full notice, transferred and assigned its rights, such as they were, to another corporation, legally constituted, and acquiring in order to continue in operation, the railroad, which, by the act of 1869, it was the declared purpose of the State, should be constructed, maintained and operated; and that corporation, the defendant now before the court, has since then maintained and operated said road, upon property over which the State has, at the same time, exercised constant and immediate supervision, and control, through its Board of Control.

It does not appear that, during the twenty-three years, from 1876, when the instrument, called the "Articles of Consolidation," was filed in the office of the Secretary of State, to 1899, any demand was ever made for compensation of any kind for the use of the right of way in question, or that it was ever intimated that the occupant was considered as holding possession upon any other terms than those of free use, and agreeably to the conditions of the original grant from the State, and of the transfer of that grant, filed, in January, 1876, in the office of the Secretary of State.

Upon the contrary, so far as the State can be considered as having taken any affirmative action, which would seem to bear upon the subject, that action, as expressed in Act 84 of 1882, is in perfect harmony with her acquiescence with regard to the matter under consideration, for she there declared in terms, that "any person, company, or corporation" desiring "to build or extend a railroad in this State," should have a right of way over any lands belonging to the State through which said road may pass. If, therefore, it should be held that the defendant's possession is unauthorized, and, in a suit brought for that purpose, the view should be taken that its road should be removed; the question would arise, what is there to prevent its immediate reconstruction in the same place, and the enjoyment, by the defendant, of a free right of way, under the act of 1882? And if this be true, ought not the defendant, who has been in possession of such right of way since 1883, have been notified when such possession began, and as a condition precedent to a recovery in this suit, that it would be charged three thousand three hundred and seventy-five dollars a year, not only from the date of its taking possession, but from January, 1876, before such possession was taken by any one? The aggregate amount here claimed, as past due, is over seventy-seven thousand dollars, whilst the evidence shows that the road could be taken up and built in the swamp, just

outside of the 120 feet limit, for less than forty-five thousand dollars, including the cost of purchasing the right of way, which is estimated at thirty-two hundred dollars. It is true that the engineer who gave the estimate was unable to do more, in stating the probable cost of the right of way, than to give it, as his opinion, that it could be bought for one hundred dollars per acre, but he gave that opinion upon the basis of his experience, and under oath, and as the line would run through an uninhabited, and uninhabitable swamp, there is nothing to suggest that the land and water, through which it would pass, is worth more than the amount stated. It is argued, however, that the act of 1882, has no application to city railroads. Without entering fully into the consideration of that question, it seems enough for the purpose of this case, to say that, for aught we know, the defendant may be authorized to build roads outside of the city as well as inside, and it certainly requires a stretch of imagination to characterize, as within the city, the vast area of prairie and swamp land upon which deer are still running wild, but which is, by law, included within the boundaries of New Orleans; or to hold a railroad which traverses such a territory, where a street has never been located or surveyed, to be only a street railroad. Beyond this, it will be denied that a railroad from the inhabited portion of the city of New Orleans to the lake is a desirable thing, and there can be no reason for supposing that the State would draw the line, in its liberality in the matter of the use of its lands, in such a case, if it should happen that the same company owned and operated lines of road in the city proper, and from the city proper to the lake, and that, otherwise, the latter line could hardly be made profitable. It is also argued that the act of 1882 is not to be considered as embracing within its provisions a strip of land along a public work, such as the canal. The answer to this seems to be that the General Assembly, in 1869, authorized the building of a railroad on the strip in question, apparently because it was considered available for that purpose. Whether it ought to be so used, depends, of course, upon the effect of such use upon the operations of the canal, and, when a case is presented in which it is made to appear that the defendant is obstructing the proper administration of the canal, as such, this court will, no doubt, consider very seriously whether a remedy may not be found within the law.

As the matter stands, the act of 1882 is a distinct declaration of the public policy of the State, to the effect that railroads shall have a free right of way over public lands, and it would be utterly inconsistent with that policy to require the defendant, which entered upon the property in

question after that act was passed, to pay for such use merely because its road was constructed before that time, and especially since the State had acquiesced in the free use of the property, during the preceding seven years, by the same road. No doubt there is public land already devoted to such public purposes as to preclude the idea that the act of 1882 was intended to apply to it, but the land in question is not of that character, and not only has the General Assembly, virtually, so declared, but the evidence in this case shows that, if not an advantage, the railroad is, at least, no obstruction or detriment to the canal, along the bank of which it is built.

No sufficient reason has been suggested why the present defendant should, in any event, be made to pay for use and occupation, for a period antedating its possession, and, as that possession began after the passage of the act of 1882, we are of opinion that a recovery in this case, for the period subsequent to such possession, would be inconsistent with the public policy declared in that act. Even if this were not so, the defendant, under the circumstances, as disclosed, would be entitled to notice, in advance, of the intention to demand compensation for the use of the property, which it had been using, to the knowledge of the State, and believed, and was justified in believing, that it had the right to use, free of charge; and it would be entitled, in common fairness, to a reasonable time, in which to make other arrangements, if it chose not to submit to the charge sought to be imposed. With respect to the demand, as made, the plea of estoppel is good, and must be sustained.

"The doctrine of estoppel applies to the State, just as it does to individuals."

State vs. Taylor, 28 Ann. 460.

State vs. Ober, 34 Ann. 359.

Breaux vs. Negrotto, 43 Ann. 435.

Davis vs. Gray, 16 Wallace, 203.

United States vs. Budd, 43 Fed. Rep. 630.

These conclusions render it unnecessary for us to determine whether the New Orleans, Metairie and Lake Railroad Company ever acquired the status of a corporation *de jure* or *de facto;* whether the franchise in question ever legally vested in it, or, assuming that it did so vest, whether it could legally have been transferred, in the manner and with the effect, as claimed by the defendant. And this opinion is not to be construed as determining any other question than that of the right to recover for use and occupancy as herein claimed, all other rights of the State being reserved.

Judgment affirmed.

## On Application for Rehearing.

BREAUX, J. Plaintiff and appellant's earnest brief on application for rehearing, and the able argument of its counsel at bar have led us carefully to reconsider the issues of the cause.

Plaintiff again in argument levels its attack against the charter by legislative act of the Metairie Company, on the ground that it had never been accepted and that the Metairie Company had never come into existence, and that since this company had never acquired a corporate existence, it was not within the terms of Act 158 of 1874, (p. 18, Acts of 1875), which authorized consolidation only of corporations "now existing under general or special laws."

Plaintiff and appellant again insist on application for rehearing that, even granting that the charter of the Metairie Company had been accepted, there had been no organization under it and that, in consequence, its attempted consolidation with the New Orleans, City and Lake Railroad Company was of no effect, and void under the terms of a statute which applied alone to existing corporations.

Further, on this application for rehearing, the insistence is that there was a non-compliance with the conditions prescribed by the act of 1874 for a valid consolidation in that there was no resolution of the Board of Directors of the Metairie Company authorizing the consolidation, nor any meeting of the stockholders approving or ratifying such a resolution, both of which are required by the act of 1874. Plaintiff and appellant also urge that the company had no Board of Directors, but in the attempted consolidation was represented by a single stockholder acting for himself and as agent of all the other stockholders, from whom no powers of attorney appear to have been introduced, the asserted agency being based entirely upon the statement of the one who assumed to act as agent. Those and other grounds of attack were directed against the existence of the Metairie Company.

Plaintiff and appellant further contend that the act of 1874, in question, conferred the power of consolidation on business and manufacturing corporations alone, and that the words of description of the act did not include a street railroad company, such as the New Orleans, City and Lake Railroad Company, nor a combination of a freight and passenger road, such as the Metairie Company, and that hence the pretended consolidation was void for want of statutory authority, which

is as essential for the consolidation of two corporations as it is for the creation of either of them originally.

Plaintiff and appellant argue that the first requisite of any contract is that there shall be persons legally capable of contracting, the second, consent to the contract legally given; that this being wanting, it follows that the act of 1874 was not compiled with in form and substance.

This court, in its first opinion, held that the conclusion at which the opinion arrived, rendered it unnecessary to determine whether the New Orleans, Metairie and Lake Railroad Company ever acquired the *status* of a corporation *de jure* or *de facto*. We can only say in answer to plaintiff's and appellant's insistence, at this time, that we have not found good reason to set aside our decree. We are inclined to the opinion that the statute of 1882, another statute upon which defendant relies to sustain its right, is not as limited in its terms as plaintiff contends, at any rate, that the State authorities did not intend to offer a grant exclusively to railroads hereafter to be built and, at the same time, retain the right, without the least notice, of compelling the railroads already constructed to pay rent for all extensions already constructed. But be that as it may, there are other statutes, to say the least, under which the defendant has the color of right which cannot be divested nor lessened in proceedings such as that now before us for decision. Besides, two Constitutional Conventions deliberated regarding the New Basin Canal and its rights without adopting ordinances indicating the least intention to have it; that prior to their respective dates, this defendant railroad was to be treated as the lessee of the State or of the Board of Control of the Canal Company.

It must be borne in mind that this is a suit for rental and not a suit to recover possession of property. In face of the different statutes and of the attempt at consolidation, if it must be considered as an attempt, and of the many years that have elapsed without the least intimation of an intention to charge rent, we do not think that plaintiff is entitled to rental.

The record discloses that the defendant has occupied the ground for which rent is now claimed for prior years, in good faith; that large amounts have been expended in making improvements which have been of benefit to the State and its property, and now, even if the State is entitled to resume possession, it should be resumed without treating the defendant as having, during these many years, been a trespasser indebted for rent in a large amount. Above all, we are not convinced

. 696      SUPREME COURT OF LOUISIANA,

State et al. vs. N. O. City and Lake R. R. Co.

that plaintiff is entitled to recover rent, even if anything be due on that ground. It might be different if this were an action for possession. To recognize this plaintiff as a lessor, would be, in effect, to recognize its right to lease property of the New Basin Canal Company. This right is expressly withheld from the latter corporation under the Constitution of 1879, and the Constitution of 1898.

The suit, if successful, would have the effect of placing in the treasury of the Canal Company the amount claimed for rent, despite the fact that it cannot be a lessor of any of its property. While it is true that the State is a party to the suit, it is also true that the State, so far as is shown by the record, appears in the suit to recover rental of this property for the Canal Company, a claim which even the State cannot set up under the plain provision of the law, for the reason that its co-plaintiff, for which it sues, cannot be a lessor of the property.

But we gather from the evidence, that without the constitutional ordinances prohibiting the plaintiff Canal Company from leasing its property, the defendant would not be responsible to the Canal Company for the rent claimed. The State, as the owner of the property, recognized, doubtless, that a railroad along its banks would be a benefit to the canal. For that reason we infer she gave to the Metairie Railroad Company, in 1869, the privilege of constructing a road north of, and adjacent to, the new canal, and directed the representatives of the Canal Company "to afford every facility for the constructing of the railroad herein provided for, which shall also be constructed as to add to the efficiency of said levee."

Even if the plaintiff, by not complying with the laws relating to consolidation of corporations, had lost its identity as a corporation, the State or the Canal Company, as we construe the different acts upon the subject, and the benefit received from the railroad as a highway between the city and the lake, would not be in a position to recover the rental claimed.

Even without regard to the pleas urged of estoppel and prescription, the State, because of express legislation, is precluded from recovering damages for the New Basin Canal.

For reasons assigned, it is ordered, adjudged and decreed that the judgment originally rendered be and it is hereby reinstated and anew made the judgment of this court, affirming the judgment of the District Court, and rehearing is refused.