(33 South. 923.)

No. 14,173.

BOARD OF CONTROL OF NEW BASIN CANAL & SHELL ROAD v. H. WESTON LUMBER CO. et al.*

(March 3, 1902.)

PUBLIC HIGHWAYS—ADVERSE POSSESSION—OBSTRUCTION—LIABILITIES.

1. By the terms of Acts 1831, p. 38, No. 18, and Acts 1858, p. 50, No. 78, and of the grants and proceedings by which the property through which it passes was acquired, the shell road on the west side of the new canal is a public highway, the acquisition of which, or the use, save for certain purposes, by individuals or corporations, is prohibited by law. Hence no individual or corporation can acquire title thereto, or to any part thereof, by prescription or otherwise.

2. The vendor of the original defendant herein had no title by purchase to any part of said road, acquired none by possession, and could convey none to said defendants, and both defendants are in the attitude of obstructing a public road in violation of law. They are not, however, liable, in a civil action, for rents, or for the value of its use and occupation.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the Board of Control of the New Basin Canal & Shell Road against the H. Weston Lumber Company and others. Judgment for defendants, and plaintiff appeals. Reversed.

Branch K. Miller, for appellant. Merrick & Lewis, for appellees.

MONROE, J. The original petition filed in this suit alleges that the property known as the "New Basin Canal & Shell Road" belongs to the state of Louisiana; that the plaintiff is the authorized representative of the state in all matters relating thereto; and that the H. Weston Lumber Company, claiming under a void title, and in bad faith, since May 22, 1895, has been in possession of a certain parcel of ground which forms part of said property; and it prays judgment recognizing the title of the state, and condemning said company for rents at the rate of $40 per month from the date mentioned. A supplemental petition alleges that the Union Lumber Company has been in possession of

*Rehearing denied March 16, 1903.

the parcel of land claimed since November 18, 1899, and, reiterating, as against said company, the averments of the original petition as to want of title, bad faith, etc., prays judgment accordingly.

The two companies, by way of defense, allege that the parcel of land in question never belonged to the state, but that the H. Weston Lumber Company acquired it by purchase from Henry Lagardere May 22, 1895, and that defendants and their authors have been in undisturbed possession under a perfect title for more than 30 years, to the knowledge and with the acquiescence of the state; and that, if the state ever owned said property, it is now estopped to assert title thereto. And the defendants plead the prescription of from 1 to 30 years.

The facts of the case, as we find them disclosed by the evidence, are as follows: By Acts 1831, p. 38, No. 18, the general assembly established the "New Orleans Canal & Banking Company," and authorized that corporation to connect the city of New Orleans with Lake Pontchartrain by means of a canal, and for that purpose to acquire land by expropriation or otherwise, the right to expropriate being limited to the necessities of a canal 60 feet wide, with a strip, to be used (on one side) for a levee and road, of 120 feet in width on each side, and the entire property to revert to the state in full ownership at the expiration of 35 years. The land through which, under this charter, it was determined to construct the canal, included what was known as the "Macarty Plantation," and, as there was no limitation upon the authority of the company to acquire by purchase, it bought an undivided half interest in said plantation, the other half interest being at the time owned by John Slidell, Laurent Millaudon, and Samuel Kohn. This property appears to have been divided by the owners into 316 squares, of different sizes, to which were given the name of "Carrollton," and it is not improbable that a partition was effected, as we find that upon April 9, 1834, by act before G. W. Christy, notary, the parties last named conveyed to the company "such portion of their lands as was necessary for the completion of the canal, levee, and roads, not, however, exceeding three hundred feet in width," and in consideration of such relinquishment of

their rights the company gave to them and to all proprietors of squares and occupants of lots in the town of Carrollton the privilege of using the canal road for pleasure carriages and light carts, free from any charge of toll; and upon May 14, 1840, by act before F. Grima, notary, said parties conveyed to the company certain of said lots or squares absolutely. Other property was acquired by the company, but, as the evidence shows that the parcel of land which is here in dispute is included in what was the Macarty plantation, we need not go beyond that plantation for the purposes of the present inquiry. There can be no doubt that it was contemplated that the company should acquire, by expropriation or otherwise, what may be called a "right of way," not less than 300 feet wide, through the middle of which the canal was to be excavated, leaving strips of land of 120 feet in width on either side; and it was expressly provided that at the expiration of 35 years the canal and road, with all the land acquired by the company on each side "to the extent of one hundred and twenty feet" should revert to the state.

Beyond this, by Acts 1858, p. 50, No. 78, it was provided that: "Whereas, by section 26 of 'An act to incorporate, * * *' it was enacted that from and after the expiration of thirty five years after the passage of this act, to-wit, from the 5th day of March, 1866, the property in said canal and road, with all the land on each side, which it has the right to acquire by forced sale or otherwise, to the extent of one hundred and twenty feet on each side of the canal * * * shall be vested in the state. And, whereas, there is reason to fear that a portion of the lands which the company has already acquired, to the extent of one hundred and twenty feet on each side of the canal, and which is necessary for the present use and purposes of the canal, its landings, roads and basins, and for the future enlargement of the canal, which the wants of commerce imperiously demand, may be encumbered and appropriated to other uses than those contemplated by the act aforesaid:

"Section 1. Be it enacted * * * that all the land which the * * * company has acquired, to the extent of one hundred and twenty feet on each side of the canal, belonging to the said company, shall be retained by the company, as trustee for the state of Louisiana, and devoted to the sole and exclusive purposes of the said canal, its landings, roads, basins, and its future enlargement and improvement.

"Sec. 2. * * * That the said * * * company shall not give, sell, alienate, or dispose of, by lease or otherwise, any portion of the land on either side of the canal, to the extent of one hundred and twenty feet, for any use or purpose other than as described in the first section of this act, nor shall any person, or body politic, or incorporation, have power to use and appropriate any portion of said land except for the purposes of police regulations."

Section 3 provides that the banquettes which might thereafter be made by the city of New Orleans along the road upon the side of the canal should not be more than eight feet wide; and

Section 4 authorizes the company to enlarge the canal, and make other improvements, subject to the original condition as to reversion to the state.

Whether the company availed itself of this authority, and what, if any, improvements were made, does not appear, but it does appear that upon March 5, 1866, the canal, as it then stood, was surrendered to, and became the property of, the state of Louisiana, and upon the next day, March 6th, by notarial act before T. O. Stark, was leased by the Governor of the state, acting under the authority vested in him by the legislative act approved February 10, 1866, for 15 years, to Richard Taylor, at an annual rental, which was to increase from $36,000 to $85,000. Upon the 29th of April, 1867, by act before the same notary, the Governor, under the authority of the legislative Acts 1867, p. 221, No. 118, entered into a new contract with the lessee, whereby the latter was authorized and required to widen the new canal to a width of not less than 100 feet, and for this purpose to use the land contiguous to the canal, "belonging to the state, and in consideration thereof, and of certain other obligations assumed by him with respect to wharves, basins, piers, abutments, bridges," etc., said lessee was relieved from the obligation to pay the annual rental as stipulated in the contract of the previous year. When the Constitution of 1868 was adopted, this last-

mentioned contract was excepted from contracts which, in general terms, were declared valid (see article 149); but we are not informed that any affirmative steps were taken to set it aside, and we think it probable, from the evidence, that the lessee remained in possession, and increased the width of the canal to 100 feet. By the Constitution of 1879 (article 180) it was provided that the property should not be leased or alienated, that a superintendent should be appointed by the Governor, and that laws should be enacted for its regulation, maintenance, and management. And by Acts 1888, p. 199, No. 144, provision was made for a board of control, which was authorized to "represent the state in all matters pertaining to" said canal. By the present Constitution (article 195) the prohibition against the lease or alienation of the "New Basin Canal & Shell Road and their appurtenances" is affirmed.

The defendants set up title which dates back to a sale said to have been made December 10, 1859, by the constable of the Seventh justice court for the parish of Orleans, in a proceeding entitled "State of Louisiana vs. Unknown Owner," at which sale it is claimed that nine certain squares of ground, which are described, were adjudicated to W. W. Handlin and Edward Allen. Authority for this proceeding is said to have been derived from Acts 1858, p. 198, No. 285, which is an act providing for the sale of lands in the parish of Orleans which had been forfeited to the state for the nonpayment of taxes, and it is quite evident, considering the provisions of Acts 1858, p. 50, No. 78, which had previously been passed during the same session of the General Assembly, that it could not have conferred authority to sell any part of the strip of land 300 feet wide which included and was appurtenant to the canal. Nor do we understand that the original title mentioned called for any part of said strip. Of the nine squares mentioned, three are described in said title, and in the subsequent mesne conveyances through which defendants claim, as bounded upon the one side by the "Shell Road," and two out of three maps, to which the oldest of these conveyances (being an act of partition between Handlin and Allen, of date November 23, 1864) refer, show the strip in question, as compared with the measure-

ments of the squares themselves, to be at least 300 feet in width. In this partition, among those which fell to Allen was the square designated by the number 771 (and also by the number 707), which is described as "measuring 370 feet 6 inches and 6 lines front on Canal, or Carrollton, avenue, 275 feet 6 inches and 6 lines front on New Shell Road, 337 feet 6 inches and 4 lines front on Short street, and 275 feet front on Dixon street." This square was sold by Allen to Beard, and upon March 12, 1868, by Beard to Stark. It appears that at that time, Taylor being in possession of the canal, as lessee, with Kenner as his agent, one Lagardere was employed by the city of New Orleans to keep a bridge which spanned the canal at the intersection of Carrollton avenue; that he conceived the idea of putting up buildings near the bridge, in which to reside and to conduct a barroom; and, according to his testimony, that he had some conversations with Kenner and Stark, as the result of which, in September, 1868, he erected the buildings upon the site which is the subject of the controversy in this suit. The statements of this witness concerning these conversations are rather contradictory, and, notwithstanding that the counsel in the case have interpreted them otherwise, we are disposed to think, upon the whole, that Kenner, in view of the witness' relation to the canal, may have given him a permission, in the nature of a license, necessarily revocable at will, to build on the canal right of way; for, if the witness erected his buildings with the understanding, as between Kenner, Stark, and himself, that he was putting them on the square No. 771, which adjoins the right of way, and which then belonged to Stark, it seems to us hardly probable that 20 years later he would have bought the entire square from Stark, and would have paid for it as though he had previously acquired no rights therein. Such, however, was the case. The act by which he acquired from Stark, August 8, 1888, contains no reference whatever to the purchaser's alleged previous occupation of the property, which is described as "Square 771, bounded by Carrollton avenue, New Shell Road, Dixon and Short streets," and contains no reference to any buildings occupied by Lagardere or by any one else, nor does it purport to convey any property

outside of or adjoining the square thus described, and the squares Nos. 772 and 773, which latter are in no manner involved in this controversy. A few years later—upon May 22, 1895—Lagardere sold the property thus acquired by him from Stark, together with squares 767, 768, and 744, acquired from Charles Ribe, to the H. Weston Lumber Company. In the act passed for the purposes of this conveyance, square 771 is described in the same terms as in the act by which Lagardere acquired from Stark, but there is this notable addition, to wit: "The above-described squares of ground [referring to the squares mentioned above] are sold, together with all the buildings and improvements thereon, rights of way. privileges, and servitudes thereunto attached and belonging, and together with the buildings situated on a portion of ground adjoining square No. 771, and now occupied by Henry Lagardere."

It is also worthy of note that in an act of sale before H. G. Dupre, notary, of November 18, 1899, whereby the H. Weston Lumber Company sold the property acquired by it from Lagardere, together with squares 765 and 770, acquired from W. W. Handlin, to the Union Lumber Company, there is no reference to any buildings or improvements, whether situated on "a portion of ground adjoining square 771" or elsewhere. It follows, therefore, that if the "portion of ground adjoining square 771" is within what we have called the "right of way" of the canal —that is to say, within the strip 300 feet in width, originally acquired for, and thereafter devoted to, the purposes of the canal—Lagardere never acquired any title thereto, for the reason, among others, that the act of 1858, from which we have quoted, not only prohibited such acquisition, but prohibited the use of the property by individuals or corporations except for the purposes of police regulations, and except, of course, for the purposes of the canal itself. And as in the act of sale to the H. Weston Lumber Company it is not pretended that Lagardere had ever purchased such property from any one, it further follows that the H. Weston Lumber Company had no other reason than the mere fact that he was in possession for supposing that he was the owner, and it also follows that, as the Union Lumber Company did not acquire the supposed title of the

H. Weston Lumber Company to the portion of ground in question, that company is now before the court resisting the demand of the plaintiff without even the pretense of a title. We have said that these consequences follow if the portion of ground thus referred to is within the right of way of the canal. Upon this question considerable testimony was taken in the district court, showing beyond dispute that the Lagardere saloon is situated upon that side of square No. 771 which lies nearest to, and is bounded by, the Shell Road, the only question in doubt being whether the saloon is on the inside or the outside of the square. When, however, to the testimony of the engineer and surveyor, who was examined as a witness for the plaintiff, is added the fact that in the very title set up by the H. Weston Lumber Company the buildings occupied by the Lagardere saloon are described as being situated on "a portion of ground adjoining square 771," that doubt is resolved, and it follows, necessarily, that those buildings are outside of the square, and on the Shell Road, by which it is bounded. Construing together the acts of 1831 and 1858, and considering that the right to use the road was secured to Slidell, Millaudon, and Kohn, and to all proprietors of lots or squares in Carrollton, by the terms of the conveyance by which the right of way was ceded, it is evident that, both as a matter of law and of contract, the available land within the strip of 300 feet which lies on the west side of the canal at the point in question, and which is not occupied by the canal itself, is a public road; and this would be equally true if the land had been expropriated or "appropriated," since section 9 of the act of 1831 provides that the proprietor of "appropriated" lands shall always have the right to communicate "with said route and canal, and this in the whole extent of said lands, which shall be considered as riparious to the canal." This being the case, the defendants, since they are both asserting title, are in the attitude of obstructing a public road or highway. They are not, however, liable, in a civil action, for rent therefor, nor for the value of its use and occupation. The suit of the same plaintiff against the N. O. City & Lake R. Co., reported in 104 La. 685, 29 South. 312, has little or no bearing upon the issues here

presented, as no road was ever built, or required to be built, upon the other side of the canal, and the state itself, both by general and special legislation, had authorized the use of that portion of the right of way for railroad purposes.

For these reasons it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, the Board of Control of the New Basin Canal & Shell Road, and against the H. Weston Lumber Company and the Union Lumber Company, decreeing that neither of said defendants has any right or title to the space of ground designated upon the plan or sketch by Edgar Pilie, surveyor, dated April 26, 1900, and annexed to the petition herein filed, as "Lagardere's Saloon," and described in the act of sale from Henry Lagardere to the H. Weston Lumber Company, passed before Charles T. Soniat, notary, May 22, 1895, as "a portion of ground adjoining square 771"; and further decreeing that said portion of ground is part of a public road, the exclusive title to which is vested in the state of Louisiana for the use of her citizens; and that plaintiff, as the representative of the state, be placed in possession thereof, with leave to defendants to remove the buildings therefrom. It is further ordered, adjudged, and decreed that defendants pay the costs in both courts.