(70 South. 806)

No. 20666.

SLATTERY v. ARKANSAS NATURAL GAS CO. et al.

(Jan. 10, 1916. Rehearing Denied Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. JUDGMENT ☞585—RES ADJUDICATA—JACTITATION SUIT.

Where in a jactitation suit plaintiff, relying upon the rule that possession of part of a tract of land with title to the whole is possession of the whole, alleges and endeavors to establish his possession of part of the bed of a navigable lake by exhibiting a patent from the United States to, and showing possession of a fractional half section of land bordering upon such lake, and there is a final judgment from which he takes no appeal, to the effect that his title, under the patent, gives him no rights below high-water mark, such judgment constitutes res judicata as against a subsequent action by the same plaintiff against the same defendant upon the same title for the recovery of the same land; each litigant appearing in the same quality as before.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1004, 1067, 1073, 1084, 1085, 1092–1095, 1132; Dec. Dig. ☞585.]

2. JUDGMENT ☞829 — RES ADJUDICATA—DECISION OF FEDERAL COURT.

Where a petitory action for the recovery of land lying beneath navigable water and alleged to have been acquired under a patent from the United States as appurtenant to the land described in the patent is dismissed by a final judgment of a federal Circuit Court of Appeals for want of jurisdiction, upon the authority of a ruling of the Supreme Court of the United States to the effect that such claim is too clearly unfounded to raise a federal question within the original jurisdiction of a federal Circuit Court, it is a vain thing to reassert such claim in a state court, as arising under the laws of the United States.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1510–1515; Dec. Dig. ☞829.]

3. NAVIGABLE WATERS ☞44—ACCRETIONS—OWNERSHIP—OPERATION OF STATUTE—"ALLUVION."

Article 509 of the Civil Code of Louisiana gives to the owner of the soil situated on the edge of the waters of a river or other stream the accretion, called "alluvion," which may "successively and imperceptibly" be added or "formed" thereto, but the article has no application to conditions arising upon the shore of a body of water found to be neither a river or stream, but a navigable lake.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 266–278, 281, 282; Dec. Dig. ☞44.

For other definitions, see Words and Phrases, First and Second Series, Alluvion.]

4. NAVIGABLE WATERS ☞44—BED OF LAKE—OWNERSHIP—"DERELICTION."

Article 510 of the Civil Code of Louisiana, relating to "derelictions" formed by running water ,retiring imperceptibly from one of its shores and encroaching on the other, declares that "the owner of the land adjoining the shore which is left dry has the right to the dereliction." The article finds no application in a case where the water of a lake, held not to be running water, has not retired from one shore and encroached upon the other, but has retired from both shores at the same time, by reason of works constructed and money expended by the state.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 266–278, 281, 282; Dec. Dig. ☞44.

For other definitions, see Words and Phrases, First Series, Dereliction.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by J. B. Slattery against the Arkansas Natural Gas Company and others. From judgment for defendants, plaintiff appeals. Affirmed.

Slattery & Slattery and Barnett & Keeney, all of Shreveport, for appellant. W. A. Mabry, Dist. Atty., and Thigpen & Herold, all of Shreveport, for appellees.

Statement of the Case.

MONROE, C. J. Plaintiff, claiming under a patent (issued by the United States in 1840) to the N. fractional ½ of section 15, township 19, range 15, containing 239.73 acres, asserts title to a body of reclaimed land of indefinite area, which at one time constituted, in part, the bed of Sodo (or "Sodor") Lake, in the parish of Caddo. He alleges that the lake at the time of the issuance of the patent was a navigable body of water, though he describes it

as a "navigable running stream," and his first contention is that the United States owned the land lying beneath it, and that, as the 239.73 acres described in the patent were bounded on the north by the lake shore, the conveyance thereof included the land under the water in front of the described tract "to the middle thread of the stream," or (as his second contention) that, if the United States did not own the land under the water, and did not therefore convey it by virtue of its patent, "it did have all the riparian rights attached to said land by the laws of Louisiana, which included all accretions and relictions attached thereto," and that those rights were conveyed by the patent and are now vested in him.

The Natural Gas Company, cited as the party in possession, disclaimed title, and referred plaintiff to the board of commissioners of the Caddo levee district as the owner of the land, which board, after filing an exception of res judicata, which was overruled, and an exception of "no cause of action," answered, setting up a title derived by it, as a state agency, from the state of Louisiana. It appears from the evidence that in 1903 plaintiff, with others (co-owners), brought suit in the district court for the parish of Caddo setting up title to the fractional half section described in the patent here relied on (which was issued to William Terrell), and further alleging as follows:

"That said fractional section at the time it was surveyed and when entered was bounded on the north by a navigable running stream called Sodo Lake, which entry, under the laws of the United States, included the land under water in front of said fractional section, and said fractional section and said land could not afterwards be granted to other parties, to the injury of those holding under the original patentee. They aver that said stream, while it continues to be a running stream, is not navigable, owing to the deepening of its channel and the large quantities of land [which] have been uncovered by the recession of the waters. *They further aver that, by reason of their rights under said patent, their riparian ownership, and the laws of the United States, they are the owners and in possession of all accretions and* derelictions 'attached to the said fractional section [italics by the court], lying between its east and west boundaries, extending northwardly until it reaches the middle of said stream, amounting to 200 acres, more or less, and that said land is worth more than $2,000. Petitioners allege that the board of commissioners of the Caddo levee district are slandering their title to said accretion and dereliction, claiming the same as owners. * * *

"The premises considered, plaintiffs pray that said board * * * be duly cited to answer hereto, and that, after all legal delays, they have judgment ordering said board * * * to desist from further slandering plaintiffs' title to said accretion and dereliction and for $1,000 damages, * * * and for all costs."

The defendant board filed an exception of "no cause of action," and a further exception that plaintiffs had no standing in court, for the reason that they had no actual possession of the land claimed, which exceptions were referred to the merits. Defendant, reserving the benefit thereof, then answered, setting up its title from the state of Louisiana, and further alleging (quoting the answer in part) and praying as follows:

"Defendant admits that Sodo Lake was a navigable lake at the date mentioned in plaintiffs' petition. * * * Defendant specially denies that plaintiffs are now, or were at the date of the institution of this suit, in possession of the land sued for, or that said possession, if it existed (which is denied), is, or was, sufficient to maintain this suit. Wherefore defendant prays that plaintiffs' demands be rejected, and in the event that said plaintiffs be decreed to have the possession required by law to institute this suit, then defendant prays that it be decreed the legal owner of said lands and placed in possession of the same."

The case was heard upon its merits, and, having been submitted for decision, the learned trial judge handed down an opinion, in which he states the question to be decided in the following language, to wit:

"Plaintiffs' only contention of ownership and possession is by virtue of their riparian rights. If they are the owners of N. fractional ½ of section 15, which is not denied, and, by virtue of said ownership, are entitled, under the law, to this land, as riparian owners, then this land by virtue thereof is part of, and accessory to, the N. fractional ½ of section 15, and the ownership and possession of this land is, we think, a sufficient possession to entitle plaintiffs to bring this suit. If plaintiffs are not riparian owners,

and said land has not thereby become part of, and an accession to, N. fractional ½ of section 15, then they show no cause of action or right to bring this suit. The sole and pivotal question then is: Are plaintiffs the owners of said land by virtue of riparian right under the law?"

In other words, the court held that, plaintiffs having brought an action in jactitation, it was necessary for them to show possession in themselves of the land to which the suit related; that they asserted no other possession of that land than such as might have resulted from its inclusion in, as part of, the tract described in their title; that they relied on the rule that possession of part of a tract of land, with title to the whole, carries with it possession of the whole; and that therefore, unless they could show that in acquiring the tract described in the patent to Terrell they had also acquired title to land under the navigable water in front of the tract so described, they had no standing to prosecute the suit. In the determination of that question the court considered the contention of the plaintiffs that, as they were purchasers from the United States, their rights were governed by the common law, but, considering also the jurisprudence of the United States Supreme Court, held that contention to be without merit, and, in effect, that it is settled by the jurisprudence mentioned that grants by the United States of land bordering on navigable waters within the limits of a state now existing or hereafter to be created convey, of their own force, no title or right below high-water mark, and do not impair the title and dominion of such state, but that the beds and shores of navigable waters, both above and below the ebb and flow of the tide, belong to each state created, and when created, by virtue of its inherent sovereignty, and that the question of the conditions upon which the title to such lands pass from it is one that each state is authorized to determine for itself and according to its local laws. Proceeding, then, to consider whether plaintiffs showed title to

the lands claimed by them under the laws of this state, the court found Sodo Lake to be, or to have been, a navigable lake (as alleged by defendant), and not a navigable stream (as alleged by plaintiffs), saying (inter alia):

"That it was at one time, and up to recent years, a large body of water, formed in a basin of the Red River Valley, some seven or eight miles long by two to five miles wide, according to the stage of the water; that it got its water from local rains and overflow waters from Red river and its tributaries; that until the raft was cut out of the upper Red river and the outlets stopped and levees built along Red river this large body of water stood there quite a large portion of the year, but that since the stopping of outlets and the levee system has been inaugurated the waters have receded and left large portions of land dry, except when the waters of Red river are very high, in which case the water backs up and covers the bed of the same."

And upon that finding, and upon the authority of the Civil Code and of the decisions of this court, it was held that the law of Louisiana gives to the owner of land bordering on the shore of a lake or body of water other than a river or stream no right to any land formed by accretion or left derelict in the bed of such water, such rights being confined to accretions and to "derelictions" from the shores of rivers or streams, and formed, in the one case, by successive and imperceptible additions to the bordering land, and, in the other case, by running water retiring imperceptibly from one shore and encroaching on the other. The opinion concludes as follows:

"Having reached the conclusion that plaintiff [plaintiffs] has [have] no riparian rights on Sodo Lake, and showing no title or possession beyond such as may be accorded as a riparian owner, we must sustain defendant's exception of no cause of action and reject plaintiff's [plaintiffs'] demands at his [their] cost."

And it was so ordered. Thereafter, in 1909, plaintiff and a co-owner brought a petitory action against the present defendant in the United States Circuit Court for the Western Circuit for the recovery of the land here claimed, and set up the same title which had been set up in the jactitation suit and is now

relied on, and the defendant board, after excepting, filed an answer in which it admitted that on February 1, 1840, Sodo Lake, was a navigable stream. The suit was dismissed on appeal by the United States Circuit Court of Appeals, in an opinion reading as follows:

"Per Curiam. Following McGilvra v. Ross, 215 U. S. 71, 30 Sup. Ct. 27, 54 L. Ed. 95, the decree of the Circuit Court is reversed, and the cause is remanded, with directions to sustain the exception of no jurisdiction and dismiss plaintiff's petition." 194 Fed. 1022, 114 C. C. A. 665.

In his present suit plaintiff filed a plea of estoppel, alleging that defendant had admitted (in the petitory action in the United States Circuit Court) that Sodo Lake was a navigable stream, and cannot now be heard to assert that it is a navigable lake. The trial court held that, even though the lake be held to be a stream, it was beyond question navigable when the patent issued to Terrell, and that plaintiff was not entitled to recover: (1) Because no title to land beneath the water passed with the patent; and (2) because the land claimed by him was not "formed successively and imperceptibly" to the land acquired under the patent, as provided by C. C. art. 509, or "by running water retiring imperceptibly from one of its shores and encroaching on the other," as provided by C. C. art. 510.

The grounds of decision are thus stated by the learned trial judge in his well-considered opinion (quoting in part), to wit:

"It is well settled that the question of riparian right is to be governed by the state law. Then what is our state law on this subject? C. C. art. 509, provides that: 'The accretions, which are formed successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion. The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not,' etc. And C. C. art. 510.

"The same rule applies to derelictions formed by running water retiring imperceptibly from one of its shores and encroaching on the other. The owner of the land adjoining the shore which is left dry has a right to the dereliction, nor can the owner of the opposite shore claim the land which he has lost. This right does not take place in case of derelictions of the sea.

"The only evidence on the question of alluvion is that of Maj. Kerr, of the state board of engineers. He testified that there was some little sedimentation dropped by the waters of Sodo Lake during times of high water, but there is no evidence whatever to show that any of the land claimed by plaintiff is alluvion.

"Then the only question left is that of dereliction. The evidence shows that the lowering of the water level in Sodo Lake has been brought about by artificial means; that it received the major portion of its water supply from Red river, through streams running out of the same and into Sodo Lake; that those water supplies have been cut off by closing the outlets from Red river, which was done at different times between 1890 and 1895; that the other water supply was from Cypress Bayou, through Ferry Lake and the Passes; and that practically even this is being cut off now by the government dam at the foot of Ferry Lake. The question has never arisen, so far as we know, as to whether the recession of waters must be natural, or whether it may be either natural or artificial, and we do not think it necessary to decide that here.

"The equitable reason underlying the principle of alluvion and dereliction is that the person who owns the land, subject to loss by the cutting away of the banks by the running water, should be recompensed by the right to take what is put there by the same means.

"We do not think it necessary to decide in this case whether the retiring of the waters in Sodo Lake was imperceptible or not.

"The modes or ways of the acquisition of property are limited to those expressly prescribed by law, and cannot be extended by implication. Zeller v. Yacht Club, 34 La. Ann. 837; Sapp v. Frazier, 51 La. Ann. 1718, 26 South. 378, 72 Am. St. Rep. 493. Under the article applying to dereliction, in order to make same applicable, the following conditions must exist: The water must be running water, and it must retire imperceptibly from one shore and encroach on the other. Can the present case fit those conditions? The evidence shows that Sodo Lake had a slight current at times, and at other times none. The evidence further shows that the water has not retired from one side and encroached on the other. but, on the contrary, has retired from both sides at the same time, and this brought about by artificial means. Dereliction applies where there is a shifting of the bed of the stream, retiring from one side and encroaching on the other, and does not apply, under the express provisions of C. C. art. 510, where there has been a recession of the waters on both sides at the same time as in the present instance."

Considering the pleadings and evidence together, we consider it established that at the date of the issuance of the patent under which plaintiff claims, and for many years afterwards, Sodo Lake was a large body of

navigable water, above the ebb and flow of the tide, and covering at times probably 30,000 or more acres of land; that the waters with which it was supplied were, of course, in motion as they poured in from its affluents and filled its basin, and as they drained out sufficiently to reduce the level from flood to normal; but that it can hardly be said to have been at any time a running stream, in the ordinary acceptation of that term. It is clearly shown that the disappearance of the water from the greater part of the lake bottom is attributable to works constructed by the defendant board, by the state of Louisiana, and by the government of the United States, mainly since 1892, and that there has been no such accretion in front of the land described in plaintiff's title as is referred to in C. C. art. 509, and no such reliction as is referred to in C. C. art. 510. In other words, it is not shown that the waters of the lake ever made any deposits which formed an accretion to plaintiffs' land, or that, as running waters, retiring imperceptibly from one shore and encroaching upon the other, they uncovered any land in front of that described in plaintiff's title; the fact being, as we apprehend, that, the main supply being cut off by the works constructed as above stated, the main body of water then constituting the lake disappeared, by reason of drainage to a lower level, evaporation, and absorption by the earth.

### Opinion.

[1] Defendant's plea of res judicata is based upon the judgment of the court a qua maintaining the exception of no cause of action to plaintiff's demands in the jactitation suit, and we are of opinion that it is well founded. The double purpose of that suit was to establish, and then protect, plaintiff's alleged possession of the land, then and now in controversy.

He, with his coplaintiffs, then alleged that they were the owners in indivision under a

138 LA.—26

claim of title from the patentee, William Terrell, who purchased the same from the United States on February 1, 1840, of a tract of land described as the N. fractional ½ of section 15, township 19 N., range 15 W., in Caddo parish.

"That said fractional section at the time it was surveyed, and when entered, was bounded on the north by a navigable running stream called Sodo Lake, which entry, under the laws of the United States, *included the land under water in front of said fractional section;* * * * that said stream, while it continues to be a running stream, is not navigable, owing to the deepening of its channel, and that large quantities of land have been uncovered by the recession of its waters; * * * that, *by reason of their right under said patent their riparian ownership, and the laws of the United States, they are the owners and in possession of all accretions and derelictions, attached* to said fractional section, lying between its east and west boundaries, extending northwardly until it reaches the middle of said stream," etc. (Italics by the court.)

And the contention of the plaintiffs then was, as is the contention of the plaintiff now, that under the laws of the United States the title evidenced by the patent included title to the land lying beneath the navigable waters in front, which land formed part, of the tract described in the patent, that, under the laws of this state, it included riparian rights which entitled them to recover the land claimed by them as having been "formed" by accretion or dereliction, and that, in showing possession of the tract described in the patent, with title to the whole, they showed possession of the land claimed that was required for the maintenance of the suit. The court held that the water in question was a navigable lake, and not a "navigable running stream," as alleged by plaintiffs, that under the laws of the United States plaintiffs had acquired no title by virtue of their patent to the lands claimed by them, and that, under the laws of this state, they had acquired none, and hence that their petition disclosed no cause of action, and it rendered judgment rejecting their demands and dismissing their suit; from which no appeal was taken. In

the suit now before us plaintiff makes the identical demands that were thus rejected, predicated upon the same cause of action, against the·same defendant, and his demands and those of the defendant are "formed by them against each other in the same quality," which meets all of the requirements of the law to constitute the thing adjudged. C. C. arts. 2286, 3556, No. 30.

It has been held by this court on several occasions that:

"No matter in what form of action or proceeding, whether by petition, or exception, or intervention, the question may have been presented, if the same question, once judicially decided between the parties, be again agitated, it is sufficient to create the presumption resulting from the thing adjudged, and forms a complete bar." Plicque & Lebeau v. Perret et al., 19 La. 328; Trescott v. Lewis, 12 La. Ann. 197; Consol. Ass'n v. Mason, 23 La. Ann. 618; Succession of McDonogh, 24 La. Ann. 33; Brady v. Parish of Ascension, 26 La. Ann. 320; Bartlett v. Wheeler, 31 La. Ann. 543; Sewell v. Scott, 35 La. Ann. 553; McNeely v. Hyde, 46 La. Ann. 1083, 15 South. 167; Police Jury v. Police Jury, 49 La. Ann. 1331, 22 South. 376; Hargrave v. Mouton, 109 La. 533, 33 South. 590; Roach v. Craig, 124 La. 684, 50 South. 652.

"The estoppel extends to every material obligation [allegation]· or statement which, having been made on one side and denied on the other, was at issue, * * * and was determined therein." Heroman v. La Institute, etc., 34 La. Ann. 815, and authorities there cited.

But even though we should entertain a doubt as to the correctness of the conclusion thus reached, the result would be the same.

[2] The United States Circuit Court of Appeals (as we have seen) dismissed, for want of jurisdiction, under the authority of the decision of the Supreme Court of the United States in McGilvra v. Ross, a petitory action brought by this same plaintiff (with an alleged co-owner) against this same defendant, upon the same title that is here relied on. Referring to the case thus mentioned, we find that the first paragraph of the syllabus reads as follows (and is sustained by the text of the opinion) to wit:

"The contention that rights below the high-water mark of navigable nontidal waters can be asserted by the patentees from the United States as appurtenant to the uplands conveyed to them, as against the title of the state when subsequently admitted into the Union, is too clearly unfounded, in view of the prior decisions of the federal Supreme Court, to raise a federal question within the original jurisdiction of a federal Circuit Court." McGilvra v. Ross, 215 U. S. 70, 30 Sup. Ct. 27, 54 L. Ed. 95.

We consider it unnecessary to refer to the many decisions which have established the doctrine mentioned in the above .excerpt, and which hold with respect thereto, that a state admitted after the issuance of a patent stands upon no different footing from one admitted prior to such issuance. And, since it is now held, by the highest authority upon that question, that claims such as that of plaintiff, asserted as arising under the laws of the United States, are too clearly unfounded even to raise a federal question, and to give the claimants a hearing in a federal court, and since that ruling has been applied by a federal court of last resort to the identical claim that we have been considering, it appears to us that its reassertion in a state court is an utterly vain thing.

[3, 4] Upon the question of plaintiff's right to recover under the state law, we concur, in the main, in the views expressed by the judges of the district court, whose opinions have been quoted. That right would exist, if at all, by virtue of the provisions of either article 509 or article 510 of the Civil Code. Article 509 gives to the owner of soil situated on the edge of a river or stream the "accretion," called "alluvion," which may be "successively and imperceptibly" added or "formed" thereto. It is not pretended that any such "alluvion" has been "formed" to the land described in plaintiff's title, and that land is shown to be on the edge of a lake, and not of a river or stream. Article 510 relates to "derelictions formed by running water retiring imperceptibly from one of its shores and encroaching on the other," and it declares that "the owner of the land adjoin-

ing the shore which is left dry has a right to the dereliction."

We agree with the trial judge that in this case the record does not show whether the retirement of the water was perceptible or imperceptible, that it does show that it was not running water, within the meaning of the statute, and that it did not retire from one shore and encroach upon the other, but retired from both shores at the same time; the fact being as we apprehend, that, if the water had been left to itself, it would now be where it was when the patent exhibited by plaintiff was issued, on the land claimed by him, and that the reason of its disappearance is that the main supply has been cut off by means of works constructed under state and federal authority, at an expense of something like $1,000,000, and that the body of the water that was left has drained off, evaporated, or been absorbed by the earth, with the result that almost the entire bed of the lake has become dry, as well upon one side as the other, so that neither the law upon which plaintiff relies nor the principle (expressed in the maxim, "Qui sentit onus, sentire debet et commodum") upon which that law is said to rest is applicable to the case presented. The occlusion of water from a large body of land as a public enterprise by and at the expense of the state, to whom the land belongs, with the consequent drying and bringing into use of the land, is not at all the forming of a "dereliction," title to which vests in the adjacent proprietors, under C. C. art. 510. The language of that article conveys no such idea, and it should convey it very clearly to justify its adoption by a court of justice, since in such case the state would be able to drain or protect from overflow its thousands of acres of submerged lands, only that the adjacent proprietors might increase their holdings at the expense of the public.

"The modes or ways of the acquisition of property are limited to those * * * prescribed by law, and cannot be extended by implication." Zeller v. Yacht Club, 34 La. Ann. 839.

We may observe in conclusion that, if plaintiff's plea of estoppel be otherwise well founded, the question whether Sodo Lake is a lake or a stream is set at large by the decision in the jactitation suit holding it to be a lake, and constituting an estoppel against an estoppel.

For the reasons thus assigned, the judgment appealed from is

Affirmed.