## No. 4526.

### WILLIAM WALSH v. CHARLES LALLANDE.

Where parties claim title to lands acquired from the United States, after the General Government has parted with its title, the courts will decide their rights under the law, without reference to the action of the officers of the land office.

A citizen, in its largest sense, is any native born or naturalized person, who is entitled to full protection in the exercise and enjoyment of the so called private rights.

By the laws of Louisiana native born free persons of color were in the full enjoyment of those rights in 1844.

By the treaty whereby Louisiana was acquired, the free colored inhabitants of Louisiana were admitted to a citizenship of the United States;

Therefore, a free colored person who was born in Louisiana, who had always lived there, and whose ancestors for two generations before him had been free and had lived in Louisiana, was a citizen of that State in 1860, at the epoch when the commissioner of the general land office, in an *ex parte* proceeding, canceled an entry made by said person under the pre-emption laws of 1841, on the thirty-first day of December, 1844, on the ground that said person, being a *free negro*, was not a citizen of the United States, although he had remained in possession of the land since the entry and had complied with all the requirements of the laws of the United States to entitle him to enter the land by pre-emption.

APPEAL from the Seventh Judicial District Court, parish of Pointe Coupée. *Butler*, J. *Haralson & Claiborne*, for plaintiff and appellee. *Edward Phillips*, for defendant and appellant.

Justices concurring: Ludeling, Taliaferro, Wyly, Morgan.

LUDELING, C. J. This is a petitory action for a tract of land situated in the parish of Pointe Coupée. The plaintiff claims under a patent from the State of Louisiana, dated on the twenty-first of February, 1861.

The defendant claims under an entry made under the pre-emption laws of 1841, on the thirty-first day of December, 1844. The defendant has been in quiet possession of the property since his settlement in 1844 until 1866.

It appears that in an *ex parte* proceeding the commissioner of the general land office ordered the cancellation of Lallande's entry on the fourteenth of November, 1860, on the ground that he was a *free negro*,

and the plaintiff was permitted to locate a school warrant on the land, which has been approved by the Secretary of the Interior. Thus it appears that the United States has parted with its title. Where parties claim title to lands acquired from the United States after the general government has parted with its title, the courts will decide their rights under the law, without reference to the action of the officers of the land office. 20 An. 435; 20 How. 7, Garland v. Winn; 1 Peters 212, Comegys v. Vosse; 14 How. Cunningham v. Ashley; 14 An. 134. The legal question, upon which the commissioner seems to have predicated his decision, is, whether Lallande, the defendant, was a citizen of the United States, and he held that he was not, because he was a *free negro.*

The agreed statement of facts in this record shows that Charles Lallande was born of free parents, in this State, and he is of mixed blood. His grandfather was a white man, a Spaniard; his grandmother was an Indian. Their issue was the father of the defendant, the defendant's mother was a mulattress. All were born free and were inhabitants of Louisiana. The other facts agreed to show that Lallande complied with the requirements of the laws of the United States to entitle him to enter the land by pre-emption; was a free colored person, who was born in Louisiana, who had always lived there, and whose ancestors for two generations before him had been free and had lived in Louisiana, a citizen of Louisiana? A citizen in its largest sense is any native born or naturalized person who is entitled to full protection in the exercise and enjoyment of the so called private rights.

By the laws of Louisiana native born free persons of color were in the full enjoyment of those rights in 1844. All free native born inhabitants of the States of New Hampshire, Massachusetts, New York, New Jersey and North Carolina, though descended from African slaves, were not only citizens of those States, but such of them as had the other necessary qualifications possessed the franchise of electors, on equal terms with other citizens. Opinion of Justice Curtis in Dred Scott.

By the treaty whereby Louisiana was acquired, the free colored inhabitants of Louisiana were admitted to citizenship of the United States.

In the case of the State v. Manuel (4 Dev. and Bat. 20), Judge Gaston, as the organ of the court, said: "According to the laws of this State, all human beings within it, who are not slaves, fall within one of two classes. Whatever distinctions may have existed in the Roman laws between citizens and free inhabitants, they are unknown to our institutions. Before our revolution, all free persons born within the dominions of the king of Great Britain, whatever their color or com-

plexion, were native born British subjects; those born out of his alle-
giance were aliens. Slavery did not exist in England, but it did in
the colonies. Slaves were not, in legal parlance, persons, but prop-
erty. The moment the incapacity, the disqualification of slavery, was
removed, they became persons, and were then either British subjects
or not British subjects, according as they were or were not born within
the allegiance of the British king. Upon the revolution, no change
took place in the laws of North Carolina than was consequent on the
transition from a colony dependent on a European king, to a free and
sovereign State. Slaves remained slaves—British subjects in North
Carolina became freemen. Foreigners, until made members of a State,
remained aliens. Slaves, manumitted here, became freemen, and
therefore, if born within North Carolina, are citizens of North Car-
olina, and all free persons born within the State are born citizens of
the State. The constitution extended the elective franchise to every
freeman who had arrived at the age of twenty-one, and paid a public
tax; and it is a matter of universal notoriety, that, under it, free per-
sons, without regard to color, claimed and exercised the franchise,
until it was taken from free men of color a few years since by our
amended constitution."

The reasoning in that case is *a propos* in this.

The judge *a quo* referred to the decision of the Supreme Court in the
Dred Scott case. That case is inapplicable. In that case the opinion
announced was that "a negro of African descent, whose ancestors
were of pure African blood, and were brought into this country and
sold as negro slaves, was not a citizen." At any rate, it is but a single
case and does not settle the question. We think the facts of this case
justify us in saying that Lallande was a citizen of Louisiana at the
time he acquired the land in question; that he had the capacity to ac-
quire it, and he has the better right to the land.

It is therefore ordered and adjudged that the judgment of the lower
court be avoided and reversed, and that there be judgment in favor of
the defendant, decreeing him to be the owner of the lands in dispute,
and rejecting the plaintiff's demand with costs of both courts.