## No. 11,988.

### M. L. BROUSSARD ET ALS. VS. ELIAS A. PHARR ET ALS.

It appearing from the evidence *dehors* two or more conflicting patents, which were issued by the Register of the State Land Office, for the same land, to different parties, at different dates, that those last issued were predicated upon prior locations made under internal improvement certificates in due form of law, and those first issued were not founded upon sufficient proofs, the last in date of issuance will reflect the paramount title.

APPEAL · from the Nineteenth Judicial District Court for the Parish of Iberia. *Voorhies, J.*

---

*Foster & Broussard* for Plaintiffs, Appellees.
*Walter J. Burke* and *L. O. Hacker* for Defendants, Appellants.

---

Submitted on briefs January 11, 1896.
Opinion handed down February 10, 1896.

The opinion of the court was delivered by

WATKINS, J.   The plaintiffs, claiming joint ownership of a tract of land, and alleging certain acts of trespass and waste committed by defendants thereon under the color of title, pray for judgment recognizing their ownership thereof, perpetually enjoining the defendants from committing further acts of waste and depredation, and maintaining their writ of sequestration of the timber which had been felled to the ground.

The defendants set up ownership and possession in good faith under titles translative of property, predicated upon patents issued by the State to their authors.

They aver that, acting under a written agreement with other parties, " they have engaged in extensive works on said land deadening and trailing timbers," and in " doing other works for the advantage of said land, the benefit of which, in the event of an eviction, would accrue to the plaintiff."

They pray for judgment, rejecting plaintiffs' demand, and dissolving their writs of injunction and sequestration.   That their title be recognized and they be maintained and quieted in their possession; but, in the alternative that judgment should go against them, they pray for judgment in their favor, permitting them to remove from the land the timbers which they have prepared for market; " or to complete their work for marketing, upon paying petitioners such market or usual price for the stumpage as shall be determined by the court; or in the alternative that petitioners elect to keep or retain all the fruits of their labor, that they be condemned *in solido* to pay (them) for the expenses " they have incurred, in the aggregate of two thousand three hundred and eighty dollars.

The court below maintained the plaintiff's title, and perpetuated their injunction; but, considering the evidence to be insufficient as to the quantity of timber that had been " cut and trailed by the defendants on these particular tracts of land," it dissolved the sequestration, fully reserving the rights of the plaintiffs as to the trees which had been deadened by the defendants, and the rights of the defendants as to the trees cut, or their value.

Virtually, the court decided the question of title to the land, and nothing more.   From that judgment the defendants have appealed.

The lands which are involved in this suit are swamp lands, in the woods.

Plaintiffs predicate their title upon *mesne* conveyances duly recorded, traced back to two certain State land warrants, bearing the numbers 66 and 67, respectively, which were issued to John De Valcourt on the 3d of March, 1847; and the defendants claim under *mesne* conveyances duly recorded, traced to three State patents, bearing the numbers 1668, 1820 and 4705, respectively.

The contention of defendants' counsel is that no patents were ever issued to De Valcourt as evidence of his title under the warrants of location which were issued in his favor in 1847; and that, for the first time, patents were caused to be issued to him more than two years subsequent to the date of the patents, which were issued to defendants' authors, and upon which they base their claim of ownership.

Consequently, they say, the question is well raised as to who have the better title to the land in dispute—the first holders of patents or the transferees of the land warrants or certificates.

It appears that in 1847, John De Valcourt purchased from the State of Louisiana Internal Improvement Warrants, Nos. 66 and 67, which were located upon the lands which are claimed by the plaintiffs. That said lands were selected by the State, and approved to the State by the Secretary of the Interior in 1850; and thereupon a certificate of location was issued to John De Valcourt therefor.

In 1852 he conveyed the land to Elizabeth Morse and another.

In 1869 they conveyed to C. and F. Sampson.

In 1872 they conveyed to Junius Sampson.

In 1894 he conveyed to Levert and Mailne, from whom plaintiffs acquired by purchase all of the said conveyances having been duly recorded.

The lands in question are of those which were donated to the State of Louisiana by the government of the United States in 1841 for purposes of internal improvement; and the State, in pursuance of an act of the Legislature, issued and sold what were known as internal improvement warrants, two of which were purchased and located by plaintiffs' vendor, as above recited. Act of Congress approved on the 4th of September, 1841; Act 91 of the Louisiana Legislature of 1844; Section 2449 of the United States Revised Statutes; Frasher vs. O'Connor, 115 U. S. 102; McCreery vs. Haskell, 119 U. S. 327; Wiggins vs. Guier, 13 An. 356.

Plaintiffs' theory is that, notwithstanding De Valcourt had obtained the certificates from the land department of the State of Louisiana prior to the date of approval by the Secretary of the Interior to the State of said lands, the vestiture of title in the State at a subsequent date draws to it a good and perfect title in him under said certificates ab initio.

And this proposition not only seems to be correct, but the State is the common author of plaintiffs and defendants' title, and consequently neither can question the title she derived from the government.

Their contention is that lands which are held under a certificate of entry thus issued enters the domain of private property, becomes a proper subject of sale, and is thereafter fully under the protection of laws affecting the rights of property. That such certificates of location afford sufficient muniments of title on which to rest a petitory action, having full effect from the time of their issuance. Simien vs. Perrodin, 35 An. 931.

That a patent is but the final confirmation of the right which was previously conferred by certificate of entry, or internal improvement location.

That, as between the holder of a certificate and a third person, it confers all the rights that a patent could confer. Wiggins vs. Guier, supra.

That proposition appears to be fully borne out by our opinion in Broussard vs. Broussard, 43 An. 923, in which the court say:

"From repeated adjudications of our courts on the subject, we gather the settled doctrine to be this: That while a receiver's receipt or certificate is not of equal dignity with a patent as showing complete and absolute divestiture of the title of the government, yet that land so held under the former enters fully into the domain of private property."

The contention of plaintiffs' counsel is, therefore, that the patent which was issued to them in 1895 conferred no new rights, but simply recognized the rights which previously existed under the internal improvement certificates; and that such patents primed those issued to the defendants' authors in 1888 and in 1893.

Per contra, that of defendants' counsel is as follows, viz.:

"We are not unmindful of the proposition upon which the plaintiffs rest their contention, that land held under a certificate of entry

enters the domain of private property, and becomes a subject of contracts, and is fully under the operation of our laws touching the property rights of all classes of persons, and such certificate is sufficient evidence to support a petitory or other real action. Simien vs. Perrodin, 35 An. 931.

" The decision referred to, and it quotes many in its support, recognizes that a receiver's receipt or certificate is not of equal dignity with a patent as showing a complete and absolute divestiture of title; and the proposition which here is submitted is, that although, as between the State and the holder of the certificate or warrant, the certificate or warrant is equivalent to title, still it can not be so, as between the holder of a warrant, who has not taken steps to cause a patent to issue to him, and the holder of a patent, who holds the highest muniment of title. This phase of the case seems to have been presented in the case of Helluin vs. Minor, in 12 An. 125.

" The court said: ' In this statement of the case, it is evident that plaintiffs' counsel have assumed that register's certificate and receiver's receipt are title. Now, as between the holder of the register's and receiver's receipt, and the patentees, the question might be much more pertinently asked, which party holds the legal title?' The general government, we believe, has uniformly held that the patentee is the holder of the legal title (Pontalba vs. Copland, 3 An. 87). If so, defendant's title must prevail, unless there are equities to defeat it.' "

The transcript exhibits the following facts as applicable to this controversy, viz.:

The two internal improvement certificates above referred to were issued and signed by the State Treasurer and Register of the State Land Office on the 3d day of March, 1847, of which John De Valcourt became the purchaser.

A certified extract from the record of the General Land Office at Washington, D. C., showing that the selections of land made by the State, under the Act of September 4, 1841, had been approved and confirmed to the State, March 6, 1850, as per said internal improvement certificates.

An extract from the record of the Land Office at Opelousas, showing the selection and approval of said lands under the a ct of Congress, on September 4, 1841.

The application of plaintiffs to the Register of the State Land Office

at Baten Rouge, on the 20th of August, 1895, with the aforesaid documents annexed, for the issuance of a patent in conformity with said internal improvement certificates.

A certificate signed by the Register of the State Land Office, on the 6th of March, 1847, that John De Valcourt had on that date filed in his office the aforesaid internal improvement certificates, together with a list of lands upon which same were to be located.

A certificate from the Register of the Land Office of the United States at New Orleans, on the 16th of August, 1895, showing the lands which were located by John De Valcourt under the aforesaid internal improvement certificates on the 6th of March, 1847.

A further certificate of the same officer, of same date, to the effect that the register of internal improvement locations shows that John De Valcourt located the lands in controversy on the date specified.

The patents of the State which were issued by the Register of the State Land Office to John De Valcourt on the 31st of August, 1895, in pursuance of the aforesaid certificates and proofs.

The testimony of the Register of the State Land Office was taken under commission, and the purport of his evidence is that the patents upon which the defendants base their title were issued by him to the defendants' vendors under the impression that the land had not been previously located and confirmed by the Secretary of the Interior. That notwithstanding the records of his office did not, at the time, exhibit any evidence that such location had been made, he was under the belief that such was the fact, and that he so informed the appellant applicant, and he agreed to accept the patents *at his own risk*. That when the aforesaid exhibits and proofs of the prior location of said lands were presented to him he became satisfied that the patents he had issued were erroneous, and he thereupon issued the patents of the defendants and gave the first patentees due notice thereof.

Under this statement of the facts underlying the patents to the land in controversy we feel entirely satisfied that the District Judge rendered a proper decree.

Judgment affirmed.