(101 South, 4)

No. 26476.

STATE et al. v. BOZEMAN et al.

(April 21, 1924. Rehearing Denied by Whole Court June 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. Navigable waters ⬦⮞36(7)—Petition to perfect title to bed of lake held to plead state's title with sufficient particularity.

Petition by the state and a city to perfect title to the bed of a lake, alleging that lake was a navigable body of water on admission of state into Union, or, if not navigable, that state owned the bed of a lake under the swamp land grant of 1849, and that state conveyed bed with reservation of mineral rights to the city under Act No. 31 of 1910, *held* to plead the nature of the state's title with sufficient particularity under, Code Prac. arts. 172, 173.

2. Navigable waters ⬦⮞36(7)—Petition to perfect title to bed of lake held to describe property with sufficient particularity.

Petition by state and city to perfect title to bed of lake, alleging that, if the lines of a government survey had been projected over the lake, the bed thereof would lie in the sections,

townships, and ranges referred to, and having annexed thereto a certified copy of the Act of sale conveying bed of lake to city, *held* to describe property with sufficient particularity.

3. Pleading ⬦⮞45—Petition by the state and a city to perfect title to bed of lake held to show location of property in particular parish within state.

Petition by the state and a city to perfect title to bed of lake *held* sufficient on plea to jurisdiction to show that the property was situated in a particular parish in the state.

4. Appeal and error ⬦⮞1046(1)—Defendants presenting full arguments on appeal on exceptions to jurisdiction not injured by hearing without notice.

Defendants were not injured if their exceptions to jurisdiction were taken up and heard without notice to them where they were permitted to present a full argument on exceptions on appeal.

5. Pleading ⬦⮞258(1), 280—Refusal to permit defendants to file supplemental and amended answer changing issues after case had been called for trial held proper.

Refusal to permit defendants to file supplemental and amended answer containing a plea of estoppel and a plea to the jurisdiction after the case was fixed and had been called for trial and after the issues had been made up between the parties *held* proper.

6. Public lands ⬦⮞117—Patent subject to collateral attack.

Patents issued by the United States government to land owned by a state by virtue of her sovereignty are wholly void, and subject to collateral attack.

7. Navigable waters ⬦⮞36(1) — Bed of lake property of state.

On admission of state into Union all of the bed of navigable lake below high water mark became the property of the state in virtue of her inherent sovereignty.

8. Navigable waters ⬦⮞1(7)—Evidence held to prove navigability of lake.

In action by the state and a city to perfect title to bed of lake as against defendants who claimed under patents from the United States government, in which the state claimed that such patents were void because the lake was navigable and the state owned the bed of the lake by virtue of her sovereignty, evidence *held* to prove the navigability of the lake at the time of the admission of the state into the Union.

**9. Navigable waters ⬤—I(7)—Evidence held to prove high water mark of lake.**

In action by the state and a city to perfect title to bed of lake as against defendants claiming under government patents, in which the state claimed that such patents were void because the lake was navigable, and the state owned the bed, evidence *held* to prove the high water mark at time of admission of state into Union.

**10. Public lands ⬤—I03(4) — Jurisdiction of courts.**

Generally courts will not assume jurisdiction pending a contest in the Land Department over public lands; but when the disposition of the land has passed from the control of the Land Department, or where the United States never had title, the parties must assert and enforce their rights in the courts, which will adjudicate thereon without reference to the actions of the officers of the Land Department.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Consolidated suits by the State and the city of Shreveport against Thomas L. Bozeman and others. From judgments rendered, all parties appeal. ·Affirmed.

A. V. Coco, Atty. Gen., B. F. Roberts, City Atty., and Thigpen, Herold, Lee & Cousin, all of Shreveport, for plaintiffs.

W. B. Massey, of Shreveport, for defendants.

By Division A, composed of O'NIELL, C. J., and ROGERS, and BRUNOT, JJ.

ROGERS, J. The state Legislature in the year 1910, by Act No. 31, authorized the register of the land office to sell and convey to the city of Shreveport, with reservation of all mineral rights of the state, the bed of what is known as "Cross Lake," in the parish of Caddo, to be used as a reservoir or storage basin for the purpose of a water supply for said city and its inhabitants. It was provided that on failure on the part of the vendee to utilize the property for waterworks purposes within 10 years from the passage of the act or afterwards, should said vendee ever cease to use it for said purpose, then the property was to revert to the state, subject to the repayment of the purchase price, but without interest.

On May 19, 1914, the formal deed of conveyance was executed, transferring the property to ·the city of Shreveport for the purpose and under the terms and conditions set forth in the statute.

By Act 149 of 1920 the Legislature in express terms extended the time within which the property should be utilized by the vendee until July 1, 1926.

On October 22, 1923, the state of Louisiana and the city of Shreveport brought 12 suits against as many defendants in the First judicial district court for the parish of Caddo, alleging, in each suit, that the full and entire and perfect title to the bed of Cross Lake was, prior to its transfer from the state of Louisiana to the city of Shreveport, vested in said state, the said lake being on the date of the admission of the state of Louisiana into the Union a navigable body of water; alleging the conveyance by the state to the city of Shreveport pursuant to the provisions of Act 31 of 1910, a certified copy of the act of sale being annexed to each petition; alleging the reservation to the state of the mineral rights in said property; alleging that the defendant is laying some sort of claim, and has caused same to be recorded, to a part of the bed of Cross Lake which would lie, if the lines of the government survey were projected, in (here follows the description of the property in section, township, and range in accordance with the claim of each defendant); also alleging, alternatively, that, if the state did not own the property by reason of its being a navigable lake, then the state did own it under the Swamp Land Grant of 1849.

Plaintiffs prayed for judgment recognizing their title to the bed of Cross Lake, particularly to the property described in each peti-

tion; and, in the alternative, that they be recognized as owners as set forth in each petition, and that they be sent into possession as such owners.

Each of the defendants filed an exception of no cause or right of action. Before the exceptions were passed upon plaintiffs filed a supplemental and amended petition in each case. The exceptions of no cause or right of action were thereupon overruled. Each of the defendants then excepted to the jurisdiction of the court. These exceptions were likewise overruled.

With reservation of the exceptions an answer was filed in each case. At the date of the trial on the merits each defendant attempted to file what was termed a supplemental and amended answer, containing a plea of estoppel and a plea to the jurisdiction of the court. The court allowed these documents to be filed so far as the plea to the jurisdiction was concerned, but refused to allow them to be filed so far as the plea of estoppel was concerned. Exceptions were reserved to the ruling.

The cases were consolidated for the purposes of trial, which resulted in a judgment in each case fixing the 172-foot contour line as the dividing line between the shore and the navigable part of the lake; and in so far as all the lands lying above the 172-foot contour line are concerned the demands of plaintiffs were rejected, and, in so far as all parts of the lands lying below the 172-foot contour line are concerned, or in the bed of the navigable lake, the claims of the plaintiffs were sustained. Each defendant filed a motion for a new trial which was overruled. All parties then appealed.

In the brief filed on behalf of the defendants the court below is charged with having erred in the following particulars, viz.:

(1) In overruling the exceptions of no cause or right of action.

(2) In overruling the exception to its jurisdiction.

(3) In trying and passing judgment on the exception to its jurisdiction without notice to defendants, or their attorney of record, to be present at such trial.

(4) In refusing to allow the filing of defendants' supplemental and amended answers in full and especially the plea of estoppel therein set out.

(5) In annulling patents issued by the United States government in this collateral proceeding.

(6) In fixing the contour line of Cross Lake, not having been requested to do so.

(7) In assuming jurisdiction and passing upon the merits of the case when the evidence showed clearly that the same subject-matter was now under consideration and being adjudicated by the United States Land Department.

(8) By not protecting the possession of defendants until the Land Department had rendered a final decision on this subject-matter.

These alleged errors will be considered and disposed of in the order of their statement.

[1, 2] 1. The exception of no right or cause of action was correctly overruled. It was leveled at the alleged failure of plaintiffs to set out that any part of Cross Lake lay within the sections, townships, and ranges referred to by plaintiffs, the failure to describe the property with particularity, and the nonconformity of the petitions to articles 172 (section 4) and 173 of the Code of Practice.

Article 172 (section 4) of the Code of Practice reads:

"The petition must contain a clear and concise statement of the object of the demand, as well as of the nature of the title, or the cause of action on which it is founded."

Article 173 of the Code of Practice reads:

"If the plaintiff demand a specific object, he must describe it with certainty in his petition,

in such a manner as to leave no doubt as to the object demanded."

It is said that the nature of the title under which the state claims to have been the owner of the property, or the nature of the claim by which it owned it, are not set out, and that the alternative allegation does not set forth by which swamp land grant the state acquired its title.

The petitions do show that the title of the bed of Cross Lake vested in the state of Louisiana because said lake was, on the date of the admission of the state into the Union, a navigable body of water; and, alternatively, it is shown that, if the state did not own the bed of the lake by virtue of its sovereign rights, then it did own said property under the swamp land grant of 1849. This was a compliance with the articles of the Code of Practice.

Plaintiffs aver that if the lines of the government survey had been projected over Cross Lake the bed thereof would lie in the sections, townships, and ranges referred to, and also set forth in each case the land claimed by the defendant in the sections, townships, and ranges, and by reference to the suit of J. A. Bickman and others versus the city of Shreveport, pending in the First judicial district court. A certified copy of the act of sale from the state to the city of Shreveport is annexed to and made part of each petition. This sufficiently identified the property.

If defendants deemed the description as thus set out to be inadequate, their remedy, if any, was by way of an exception of vagueness, and not by way of an exception of no cause or right of action.

[3] 2. The plea to the jurisdiction is grounded upon the alleged failure of plaintiffs to show that the property is situated in Caddo parish, or even in the state of Louisiana.

Pretermitting the right of the court to ju-
156 LA.—21

dicially notice that Cross Lake lies within the parish of Caddo, state of Louisiana, we find that a certified copy of the act of sale from the state to the city of Shreveport is annexed to and made part of each petition, and that in said act of sale it is distinctly set forth that the conveyance is made under the authority of Act 31 of 1910. A reference to the title of the act shows that the purpose of its enactment was to authorize the register of the land office "to sell and convey to the city of Shreveport the bed of what is known as *Cross Lake, in the parish of Caddo,*" etc. (Writer's italics.) Besides, it is shown that the claim of the state rests, first, upon its sovereignty, and, alternatively, upon a swamp land grant. Manifestly, such claims could have been urged only upon lands situated within the borders of the state. It is also alleged that the property is the same as claimed by these defendants as plaintiffs in the suit of Bickman and others versus the city of Shreveport, filed in the First judicial court for the parish of Caddo. The plea was properly overruled.

[4] 3. We do not find anything in the record showing that the exceptions to the jurisdiction were taken up and heard without notice to defendants. On the contrary, the minutes of the court show that in each of the 12 cases the exceptions were taken up, argued, and overruled on November 14, 1923. Be that as it may, defendants have suffered no injury, since they have had the opportunity of presenting, in this appeal, a full argument on said exceptions.

4. Defendants sought to file supplemental and amended answers, containing a plea of estoppel and a plea to the jurisdiction, on the day of the trial. Plaintiffs objected to "all portions of the answers except such as question the jurisdiction of the court," on the ground that they came too late, and that they changed the issues after the case was at issue. The objection was sustained, re-

serving defendants the right to renew it to the objectionable portion of the answers "if the evidence introduced by the plaintiffs will justify it." Defendants excepted to the ruling of the court.

Defendants based their plea of estoppel upon the alleged recognition by the state of the title of the United States. The plea to the jurisdiction was grounded upon the theory that the Department of the Interior had the exclusive authority to determine the respective rights of the parties to the property.

[5] We think the ruling of the court was correct, first, because the amendments were tendered after the case was fixed and called for trial (McKown v. Mathes, 19 La. 542; Duval v. Kellam, 1 Rob. 58; Wright v. Railey, 13 La. Ann. 536; Case v. Watson, 22 La. Ann. 350; Spyker v. Hart, 22 La. Ann. 534); secondly, because the issues had been made up between the parties and could not be changed by further pleadings (McKown v. Mathes, 19 La. 542; Case v. Watson, 22 La. Ann. 351; Guilbeau v. Thibodeau, 30 La. Ann. 1099; Schmidt & Ziegler v. Ittman, 46 La. Ann. 894, 15 South. 310).

5. Three of the defendants (Noonan, McDonald, and Theriot) hold under patents from the United States. The other defendants claim as settlers on government land. The three patentees contend their titles as such cannot be "collaterally attacked."

[6] If the state of Louisiana owned Cross Lake by virtue of her sovereignty, then the United States government never had any title thereto, and the patents in question are wholly void, as is any other deed executed by one not the owner.

"Ever since the decision in Pope v. Wendell, 9 Cranch, 68 (9 L. Ed. 665), it has been the settled law that a patent is void at law if the grantor had no title to the premises, or if the officer who issued the patent had no authority so to do; and the want of such title or authority can be shown in an action at law." Knight v. United Land Association, 142 U. S. 176, 12 Sup. Ct. 262, 35 L. Ed. 976.

See, also, Albritton v. Shaw, 148 La. 439, 87 South. 32.

[7] The title of the state is dependent upon the navigability of Cross Lake in 1812, the date of the admission of Louisiana into the Union. If at that time the lake was a navigable body of water all of its bed below high water mark became the property of the state in virtue of her inherent sovereignty. The state's title was original, and not derivative. Pollard v. Hagan, 3 How. 212, 11 L. Ed. 565; Coyle v. Smith, 221 U. S. 573, 31 Sup. Ct. 688, 55 L. Ed. 853; Scott v. Lattig, 227 U. S. 229, 33 Sup. Ct. 242, 57 L. Ed. 490, 44 L. R. A. (N. S.) 107; State v Bayou Johnson Oyster Co., 130 La. 610, 58 South. 405; Perry v. Board of Commissioners, 132 La. 422, 61 South. 511; State v. Capdevielle, 146 La. 106, 83 South. 421.

[8] The sole issue to be determined, therefore, is the navigability vel non of Cross Lake in the year 1812. The testimony in the record, as well as the official surveys, reports, maps, and other documents offered in evidence, clearly establish the navigability of the lake at that date.

Cross Lake was one of a chain of lakes which came into existence through the formation in Red river of what is historically known as the "Great Raft." The other lakes were designated by the names of Sodo, Ferry, and Clear. These lakes were created some time between the years 1770 and 1790. The formation of the raft began in the latter part of the fifteenth century near the present mouth of Red river. It gradually grew in size until it was many miles long. By reason of decay at its downstream end and additions to its upstream end the raft actually proceeded up stream, although its progress was necessarily slow. In about the year 1780 the raft reached a point in Red river where its obstruction of the waters of said river caused them, in turn, to block the outlet of Cross bayou, thereby constituting a dam

which resulted in the creation of Cross Lake. The lake occupied the valleys of Cross bayou and Paupau creek, covered approximately 10,000 acres of land, and became the storage basin of a drainage system draining an area of about 300 square miles.

Cross, Ferry and Sodo Lakes, with their connecting bayous, formed one continuous chain of waterways which, in pre-railroad days, was the route of an extensive commerce between Shreveport, La., and Jefferson, Tex. This navigation began about 1840, and for a time reached considerable proportions. It diminished, however, between 1870 and 1880, due in part, to the construction of railroads in that territory. Actual navigation of Cross Lake by steamboats in the '50's, '60's, and '70's, with well-known and regular steamboat landings on the shores of the lake, was established by the testimony of witnesses with personal knowledge of the facts. And by Act 256 of 1850 the state undertook to, provide for the improvement of the navigation of these lakes and their connecting bayous.

During the years 1913 and 1914, the Department of the Interior, after a most comprehensive and exhaustive survey made at its instance, and upon the advice of the solicitor general (at the time Acting Attorney General), reached the conclusion that Ferry Lake was a navigable body of water at the date of the admission of Louisiana into the Union, and that consequently, the United States never had any title to the lake bed, which belonged to Louisiana in virtue of its inherent sovereignty. The General Land Office was accordingly advised that the title of the state was perfect up to the contour of 173.09, which was found to be the elevation of the mean high water mark.

Ferry Lake and Cross Lake were connected by Sodo Lake (part of which was involved in the case of Slattery v. Arkansas Natural Gas Co., 138 La. 794, 70 South. 806). It is shown by the testimony that the bed of Cross Lake was 4 or 5 feet lower than the bed of Ferry Lake. With the water surfaces of the lakes identical, it necessarily follows that if Ferry Lake was navigable in 1812 Cross Lake, with a lower bed, was also navigable at that period. In fact, this was the conclusion reached by the Department of the Interior after an investigation similar to that of Ferry Lake was had. The result of this investigation was a report to the effect that Cross Lake was a navigable body of water, with its ordinary high water mark at an elevation of 172 feet above mean Gulf level at the date of the admission of the state into the union. This report was approved by the supervisor of surveys (Mr. A. D. Kidder, who had been in charge of the Ferry Lake investigation) by the Commissioner of the General Land Office and by the Secretary of the Interior.

The removal of the raft, which was completed in 1873, together with the extension of the levee system, and the improved drainage of Red river, caused the waters of the lake to recede to such an extent that at the present time the outlet of the lake drains out all but about two feet of water in its deepest part. During the summer months the remaining water dries up, so that for several months of each year the lake becomes ordinary dry land.

We are satisfied from our examination of the record, that at the time Louisiana was admitted into the Union Cross Lake was a navigable body of water with its ordinary high water mark at an elevation of 172 feet.

6. Defendants complain of the action of the court in fixing the 172-foot contour line as the dividing line between the shore and the navigable part of the lake, on the ground that the court was not requested to establish said line. Plaintiffs, on the other hand, complain, as being ultra petitionem, of so much of said judgment as rejects their claims to all of

the lands lying above the 172-foot contour line.

[9] Plaintiffs' suits are for the recognition of their title to the bed of Cross Lake. Defendants are denying plaintiffs' title. Testimony was adduced, without specific objection, on behalf of plaintiff showing that the ordinary high water mark of Cross Lake in 1812 was at the 172-foot contour above mean Gulf level. The bed of the lake was thus established as being below and up to said contour line. We think the judgment in this respect is amply supported by the record.

7 and 8. These assignments of error may be considered together. While the Land Department was within its rights in causing the survey of 1871 to be made, nevertheless, whatever action it took in regard thereto, and whatever patents were issued thereunder, could not affect the rights of the state. The Land Department could not by characterizing the lands in the bed of Cross Lake as public lands deprive the state of its ownership of said lands in virtue of its inherent sovereignty.

[10] The jurisdiction of the Land Department extends only to the public lands of the United States and not to lands to which the United States has no title. The general rule is that the courts will not assume jurisdiction pending a contest in the Land Department over public lands. When, however, the disposition of the land has passed from the control of the Land Department, or where the United States never had title to the land in question, the parties must assert and enforce their rights in the courts which will adjudicate thereon without reference to the actions of the officers of the Land Department. Walsh v. Lallande, 25 La. Ann. 188; Copley v. Dinkgrave, 25 La. Ann. 577; Marks v. Martin, 27 La. Ann. 527.

Judgment affirmed.

Rehearing refused by the WHOLE COURT.