(106 So. 708)

Nos. 27466, 27524.

## McGLOTHLIN v. CITY OF SHREVEPORT.

(Nov. 30, 1925.  Rehearing Denied Jan. 4, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Public lands** ⟜152 — **Squatter on former lake bed cannot bring possessory action against state's grantee.**

    One taking possession of part of former lake bed belonging to state as mere squatter, in hope of acquiring pre-emption rights under Act No. 21 of 1886, *held* mere tenant at will or by sufferance, though not mere trespasser, and hence not entitled by possessory action to oppose re-entry of state or city granted lake bed for reservoir by Act No. 31 of 1910, as amended by Act No. 149 of 1920.

2. **Appeal and error** ⟜456—**Writs of certiorari and prohibition, restraining enforcement of injunction pending action on devolutive appeal, perpetuated, where plaintiff's possessory action was dismissed on merits.**

    As injunction restraining city from flooding land by closing sluice in dam to complete reservoir for which it was granted lake bed by Act No. 31 of 1910, as amended by Act No. 149 of 1920, fell with dismissal on merits of plaintiff's possessory action against city, writs of certiorari and prohibition restraining enforcing of injunction pending action on devolutive appeal were perpetuated.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Alex McGlothlin against the City of Shreveport.  Judgment for plaintiff, and defendant appeals.  Reversed, suit dismissed, injunction dissolved, and writs of certiorari and prohibition perpetuated.

B. F. Roberts, City Atty., and Thigpen, Herold, Lee & Cousin, all of Shreveport, for appellant.

Clifton F. Davis, of Shreveport, for appellee.

ST. PAUL, J.  In 1812 Cross Lake, in Caddo parish, was a body of navigable water, whose ordinary high-water mark was 172 feet above mean Gulf level.  This lake and the bed thereof became the property of the state of Louisiana upon her admission into the Union in that year.  State v. Bozeman, 156 La. 635, 101 So. 4.

In time, and for reasons set forth in the case just cited, this lake went dry; and the bed of the lake, below the 172 feet above mean Gulf level, thereupon became *public land* belonging to the state.

Thereupon many individuals gradually entered upon, and took possession of, portions of the former bed of said lake; some under patents issued by the United States, some under deeds from the Vicksburg, Shreveport & Pacific Railroad Company, assignee or successor to the grant (or part thereof) by the United States to the Texas Pacific Railroad by Act of March 3, 1871 (16 Stat. 573), and some as mere *squatters* in the hope of acquiring pre-emption rights.

Plaintiff here was among those last mentioned.  He was a mere *squatter,* wherein this case is readily distinguishable from that of Bickham, who held under a patent from the United States.  Bickham v. City of Shreveport, 156 La. 648, 101 So. 8.

### I.

[1] It is quite true that originally plaintiff, though a *squatter,* was yet not a mere *trespasser,* since, under Act 21 of 1886, he, as the occupant of said lands, had in effect the exclusive right to acquire them from the state (Albritton v. Steere, 153 La. 561, 96 So. 121); and no one could disturb him but the state (Griffin v. Cotten, 1 Rob. 142; Miller v. Lelen, 19 La. 331; Bailey v. Taylor, 8 Mart. [N. S.] 124, 19 Am. Dec. 175).

But there his rights ended.  As to the state he was a mere tenant at will.

"A mere settler [upon public lands], even with the hope of pre-emption, until he actually makes his entry, knows that he has no title. He has an expectancy, and nothing more.  He is a tenant by sufferance."  Gibson v. Hutchins, 12 La. Ann. 545, 68 Am. Dec. 772.

And the state, which was at all times the *owner* of the land (State v. Cross Lake Club, 123 La. Ann. 208, 48 So. 891), had the right, at any time before he exercised his preemption right, to withdraw the lands from sale and make any disposition thereof which it might see it (Banning Co. v. California, 240 U. S. 142, 36 S. Ct. 338, 60 L. Ed. 569).

This right which the state had it exercised by Act 31 of 1910, p. 50 (amended by Act 149 of 1920, p. 228), whereby it granted the bed of Cross Lake to the defendant as a reservoir for a city water supply.

And, since a mere *tenant at will* cannot by the possessory action oppose the re-entry of the owner (or his assigns), by whose sufferance he holds (Sallabah v. Marsh, 34 La. Ann. 1053), it follows that plaintiff's possessory action must be dismissed, and with it his injunction restraining the defendant from closing the sluices in the dam intended to complete its reservoir, thus flooding the bed of Cross Lake, including the property occupied by plaintiff (34 La. Ann. 1053). See, also, section 4 of said Act 31 of 1910, granting to defendant full police power over said lake.

## II.

[2] Pending action on this appeal, which was only devolutive and not suspensive, defendant secured from this court, under its supervisory power, a stay order restraining the district judge from enforcing the injunction herein issued by him.

As the case is now disposed of on the merits adversely to the plaintiff, and the injunction falls, as a matter of course, with the dismissal of the suit, it is therefore unnecessary to consider the writ, which has now fulfilled its purpose. It will therefore be perpetuated.

### Decree.

The judgment appealed from is therefore reversed, and plaintiff's suit is now dismissed, and the injunction herein sued out dissolved, at plaintiff's cost in both courts. It is further ordered that the writs of certiorari and prohibition herein issued be now perpetuated.

LAND, J., takes no part.

[NOTE BY ST. PAUL, J.—The writer thought that, for the reasons given in paragraph II, the writs of certiorari and prohibition should be *recalled*, and so wrote it in both opinion and decree; but the rest of the court thought the writs should be *perpetuated*, and the change was made accordingly.]