ST. PAUL, J.
 

 The lands over which this controversy arises were once covered by the waters of Cross Lake, Caddo parish, a navigable body of water at the time Louisiana was admitted to the Union. . Hence said lands became the property of the state by virtue of her sovereignty when in course of time Cross Lake dried up and the land beneath it became fit for human habitation. State v. Bozeman, 156 La. 635, 101 So. 4; McGlothlin v. Shreveport, 160 La. 101, 106 So. 708.
 

 I.
 

 But notwithstanding the fact that said lands came to the state by virtue of her sovereignty and not by grant of Congress, nevertheless, by Act No. 124 of 1862, entitled, “An act relative to shallow lakes,” the Legislature ordained:
 

 “That all lakes which, by reason of any natural causes whatever, may become dry land over which the surveys of the state may be extended, be, and they are hereby declared to be
 
 swamp lands
 
 of the same character as those granted to the state by the Acts of Congress approved March 2, 1849, and September 28, 1850.”
 

 When the government of the United States finally removed, in 1872, the “Great Raft,” which for nearly 100 years had obstructed the flow and navigability of Red river (the history of which is told in State v. Bozeman, supra), the waters of that river and the whole-drainage system of that part of the state resumed their former natural course; and thus in time Cross Lake dried up from natural causes (i. e., not by reason of any artificial system of drainage), and the land thus un
 
 *849
 
 covered then became
 
 in fact,
 
 as well as in law,
 
 swamp lands
 
 of the same character as those granted to the state by the acts of Congress abovesaid.
 

 Nor do we think that said Act No. 124 of 1862 is broader than its title. All lakes must necessarily become
 
 shallow
 
 lakes before ultimately drying up altogether, so that the title, “Relative to shallow lakes,” gave a clear insight into the character of legislation intended; which was all that was necessary. In State v. Fobbs, 160 La. 237, 106 So. 840, we said that more harm than good would result from an interpretation too rigorous and technical of the constitutional requirement that the object of an act should be expressed in its title, and added:
 

 “If, in applying it, we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the Legislature, without fulfilling the intention of the framers of the Constitution” — quoting from Succession of Larizetti, 9 La. Ann. 329.
 

 II.
 

 Plaintiffs hold the lands in controversy through inheritance from A. H. Leonard and Levy Cooper, who had acquired the same by purchase from the Caddo levee board, on September 19, 1895; and the Caddo levee board had acquired the same (so plaintiffs claim) by Act No. 74 of 1892.
 

 In Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, it was held that the grant by the state, to the various levee boards, of certain lands within their limits, was not a grant of the lands in praesenti, but a grant of the right to acquire the lands by a conveyance from the proper state officers. It was there held, however, that —
 

 . “The various «levee boards, all organized under 'similar statutes [Act No. 97 of 1S90; Act No. 74 of 1SÜ2, etc.], and their assigns, acquired such an interest in the lands mentioned in the statutes that (1) the levee boards may at any time demand a conveyance thereof from the proper authorities (State ex rel. Levee Board v. Capdervielle, 142 La. 111, 76 So. 327); (2) the assignee of the levee board may enjoin the register of the land office from, selling such lands under the general land laws of the state (Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173); and (3) such assignee may even cause to have canceled a patent actually issued to a third person j£or such lands (State ex rel. Levee Board v. Grace, 145 La. 962, 83 So. 206).”
 

 The reason is that by such grants to the different levee boards, the state intended to and thereby did, withdraw such lands thenceforth from the operation of the general land; laws.
 

 III.
 

 Plaintiffs, alleging that the register of the land office claims that the lands in controversy are public lands of the state and subject to entry, lease, or sale under the general' lands laws thereof, and that he purposes to sell or lease them under the provision of such laws, pray for an injunction forbidding and' restraining the register from thus proceeding, and, in the alternative, that the register and the auditor of public accounts issue conveyances in due form transferring said lands-to the levee board.
 

 And it is clear that, if the lands in controversy are covered by the grant made to theOaddo levee board by Act No. 74 of 1892, or by Act No. 160 of 1900 amendatory thereof, then plaintiffs are entitled to the relief sought.
 

 Now, Act No. 74 of 1892 grants to theCaddo levee board “all lands now belonging" or that may hereafter belong to the state of' Louisiana and embraced within the limits, of the levee district as herein constituted, * * *
 
 whether the said lands or parts of land were originally granted by the Congress■ of the United States to the state of Louisiana, or whether the said lands have been or may-hereafter be forfeited, or bought im, by or forr
 
 or
 
 sold to the state at tax sale for nonpayment of taxes” (section 9);
 
 and Act No. 160 of 1900 (section 2) amends said act of 1892
 
 *851
 
 by omitting therefrom the language which we have italicized. So that under this last act the state clearly conveyed to the levee board
 
 all lands
 
 then or thereafter belonging to the state, however they may have been acquired by the state.
 

 IV.
 

 It is claimed by the defendants that the language of the act of 1892 which we have italicized above
 
 restricts
 
 the grant to such lands only as were acquired precisely in the manner thus stated. But we are not prepared to admit that such is the case. By Act No. 124 of 1862, above quoted, the dry bottoms of shallow lakes had been declared to be “swamp lands of the same character” as those granted by Congress; and even before that the Legislature had already assimilated them to such swamp lands. Act No. 247 of 1855, p. 306. Cf. paragraph 2 of section 2929, Rev. Stat. 1870. And since
 
 m point of fact
 
 there was no difference in the • character of the lands, and the policy of the state had always been, up to the time of the creation of the various levee boards, to. apply the proceeds of all such lands indiscriminately to levee (and reclamation) purposes, we see no good reason for supposing that the Legislature meant to change the policy of the state in that respect by
 
 mere silence.
 
 Cf. Rev. Stat. 1870, § 2933; Act No. 12 of 1884.
 

 V.
 

 But be that as it may as to the other levee boards of the state, Act No. 160 of 1900, above mentioned, has placed the status of former state lands in the
 
 Caddo levee district
 
 beyond the domain of further controversy, whether that act be considered
 
 as
 
 a
 
 legislative interpretation of the grant intended l>1) the act of 1892 or as an additional grant.
 
 If the former, then this authoritative declaration of the state’s intention is binding upon the state’s officers. Cf. State v. New Orleans City & L. R. Co., 104 La. 685, 29 So. 312. And if the latter, then this new grant inured at once to the benefit of those who hold from the levee board; and the state and all state agencies are therefore forever estopped thereby from ever thereafter asserting title to the lands in the face of the obligation of warranty resulting from such grant. Broussard v. Pharr, 48 La. Ann. 230, 19 So. 272; Rogers Locomotive Works v. American Emigrant Co., 164 U. S. 559, 17 S. Ct. 188. 41 L. Ed. 552; Wolcott v. Des Moines Nav. & R. Co., 5 Wall. 681, 18 L. Ed. 689; Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162. And see, also, State v. Ober, 34 La. Ann. 359; Vicksburg, S. & P. R. Co. v. Sledge, 41 La. Ann. 896, 6 So. 725; State v. Vicksburg, S. & P. R. Co., 44 La. Ann. 981, 11 So. 865.
 

 Hence our conclusion is that the injunction herein properly issued.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.
 

 THOMPSON, J., takes no part.