Being convinced that plaintiffs' action must fail for reasons which are somewhat different from those expressed in the main opinion, it is in order for me to set forth the views which I entertain.
Since this is a petitory action, the duty rested upon plaintiffs to establish a title to the property in controversy. They maintain that they have carried this burden and that the title which they received from the State is wholly valid under the redemption statute, Act No. 47 of 1938. On the other hand, the defendant contends that plaintiff's title is not good for the reason that the lands in question were dedicated to public use, i.e., flood control, by Act No. 99 of 1924. The holding of the main opinion sustains defendant's contention that is, that the legislature dedicated by implication, through Act No. 99 of 1924, the State's lands situated within the Spillway for public purposes; that title thereto remains in the State and that plaintiffs could not legally acquire title under Act No. 47 of 1938 or any other redemption act.
It is to be conceded at the outset that the defendant, Orleans Levee Board, has not acquired a title to the property. The title to the land, unless it be that plaintiffs have reacquired a valid title when they redeemed the property under Act. No. 47 of 1938, is in the State. But I do not regard the State's title to be absolute and indefeasible. Rather, I think that it is an inchoate title, similar to that of a trust which inures to the benefit of the Orleans Levee Board and that the latter has the right to demand from the State, at any time, an absolute and unassailable title, by requiring the Register of the State Land Office to execute a conveyance of donation in favor of Grand Prairie Levee District and by exacting that the Board of Commissioners of that District execute a deed of transfer to it.
In order to give the reasons upon which my conclusion is predicated, it is necessary to consider the acts of the Legislature under which a former owner is given the right (after the constitutional prescriptive period for redemption has elapsed) to redeem property adjudicated to the State for non-payment of taxes; those acts by which the forfeited State lands have been donated to levee districts, and the jurisprudence under which the various statutes on the subject have been interpreted and explained.
It is admitted, in this case, that the land to which plaintiffs now claim title is situated within the confines of the Grand *Page 787 
Prairie Levee District. This Levee District was created by Act No. 24 of 1898 and it was provided, in section 11 thereof (which is similar to other Levee District Acts), that, in order to enable the Board to assist in developing, establishing and completing a levee system in the District; "all lands now belonging or that may hereafter belong to the State of Louisiana, and embraced within the limits of the Levee District * * * shall be, and the same are hereby given, granted, bargained, donated, conveyed and delivered unto said Board * * * whether said lands have been or may hereafter be forfeited to or brought in by or conveyed or sold to the State at tax sales for non-payment of taxes, where the State has or may hereafter become the owner of lands by or through tax sales, conveyance whereof shall only be made to the said Board of Levee Commissioners, after the period of redemption shall have expired, provided, however, that any and all former owners of lands which have been forfeited to or purchased by or sold to the State for non-payment of taxes may at any time within said six months next ensuing, after the date of the passage of this act redeem said lands or any of them upon paying to the treasurer of the State all taxes, interest, costs and penalties due thereon down to the date of such redemption;but such redemption shall be deemed and be taken to be sales ofland by the State, and all and every sum or sums of money soreceived shall be placed to the credit of the Grand Prairie LeveeDistrict." (Italics mine.)
It is further provided in this section that, after the six months period has expired, it shall be the duty of the State Land Office to convey to the Levee District by proper instruments the land donated to it and that, when such instruments of conveyance have been executed in favor of the Levee District and recorded in the Recorder's office of the Parish of Plaquemines, the title to the lands, with the possession thereof, shall from thenceforth vest absolutely in the Board of Levee Commissioners.
The redemption rights given to the former owners of the property referred to in the statute are the rights provided for by the Constitution of the State and also by section 62 of Act No. 170 of 1898, which declared that the owner of any land which had been adjudicated to the State for non-payment of taxes had the right, within twelve months from the time the adjudication was recorded, to redeem the property upon payment of the taxes, interest and costs, etc. When the twelve month prescriptive period accrued, the right of the former owner to redeem was nullified, except in cases where the lands were donated to the Levee Districts by the State, and, in those cases, the former owners were given an additional six months from the date of the passage of the Levee District Acts to reclaim their lands from the State. However, it is significant to note that, as shown by the language used in Section 11 of Act No. 24 of 1898 which I have italicised above, the Legislature plainly displayed its intention to give to the Levee District full benefit of all redemptions which were made by tax debtors within six months after the passage of the Act (where the tax debtors had allowed one year to expire from the date of the redemption) — for it was provided that the proceeds derived from the redemptions were to be credited to the Levee District.
Hence, it is obvious that, under Act No. 24 of 1898, the Grand Prairie Levee District obtained an inchoate title (or at least a right which could only be revoked by the Legislature itself) to all lands situated within the District, which had been adjudicated to the State for non-payment of taxes and which had not been redeemed by the former owners within one year from the date of the recordation of the adjudication. Of course, the Levee District did not obtain an absolute and indefeasible title because it has been held by the Supreme Court on numerous occasions that the grants to the Levee Districts were not in praesenti but, rather, that they afforded to the Districts the right to acquire the lands by a conveyance from the proper state officers. See McDade et al. v. Bossier Levee Board, 109 La. 625, 33 So. 628; Hartigan v. Weaver, 126 La. 492, 52 So. 674; Atchafalaya Land Company, Ltd., v. Dibert, Stark Brown Cypress Company, Ltd. et al., 157 La. 689, 102 So. 871; State v. Cross Lake Shooting Fishing Club, 123 La. 208, 48 So. 891; State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor,142 La. 111, 76 So. 327; Atchafalaya Land Company v. F.B. Williams Cypress Company et al., 146 La. 1047, 84 So. 351; State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678; State ex rel. Fitzpatrick *Page 788 
v. Grace, 187 La. 1028, 175 So. 656; Ballard Island Oil Gas Company v. Douglas, 172 La. 385, 134 So. 257; State ex rel. Hodge v. Grace, 191 La. 15, 184 So. 527; Ellerbe v. Grace, 162 La. 846,111 So. 185, and Standard Oil Co. of Louisiana v. Allison,196 La. 838, 200 So. 273.
However, the jurisprudence is also firmly established that, even though the Levee Districts to whom the lands were donated failed to obtain a written conveyance from the Register of the State Land Office, the effect of the legislative grants were of such a nature as to vest in such districts the right to demand at any time that proper instruments of conveyance be delivered to them; that lands in that category were withdrawn from the operation of the general land laws and that, until the grants were revoked by the Legislature, the officers of the State were without right or power to grant to anyone a title to such lands by patent or otherwise. See State ex rel. Board of Commissioners of Caddo Levee District v. Grace, 145 La. 962, 83 So. 206; Atchafalaya Land Co. v. Dibert, Stark Brown Cypress Company, Ltd., et al., supra, Ellerbe v. Grace, supra, and Atchafalaya Land Co. v. F.B. Williams Cypress Co., supra. And see also Board of Commissioners v. Hardtner, 164 La. 632, 114 So. 494, and State ex rel. Fitzpatrick v. Grace, supra, where the effect of the passage of certain statutes, which were said to repeal the grants to the levee districts, are fully discussed.
Thus, it seems clear that, under Act No. 24 of 1898, the Grand Prairie Levee District obtained an inchoate title to all lands sold for taxes within the confines of the district, which had not been redeemed within one year from the date of the adjudication, and that the former owners of such property were without right to redeem it under Act No. 170 of 1898. This apparently continued to be the law until 1912 for, although section 62 of Act No. 170 was amended by Act No. 315 of 1910, no change was made in the statute with respect to the rights of former property owners who failed to redeem their land (which had been adjudicated to the State for non-payment of taxes) within twelve months from the date of the recordation of the adjudication. However, by Act No. 41 of 1912, which amended section 6 of Act No. 315 of 1910 and section 62 of Act No. 170 of 1898, the former owners of lands adjudicated to the State for nonpayment of taxes were given the right to redeem the property by the payment of taxes, interest and costs, etc. "as long as the title thereto is in the State * * *" and, by Act No. 72 of 1928 which amended Act No. 41 of 1912, the right of redemption was enlarged so as to include lands adjudicated to any of the political subdivisions of the State as well as the State itself.
These acts (No. 41 of 1912 and No. 72 of 1928) which specifically grant to the former owner the right to redeem his lands which have been adjudicated for nonpayment of taxes as long as title thereto remains in the State or any of its political subdivisions, necessarily revoked the right of the levee districts to demand and obtain an absolute and indefeasible title to any land donated to them in all cases where the former owners had previously exercised their rights and had redeemed their property (even though the constitutional prescriptive period of redemption had accrued). See Woods v. Jastremski, 201 La. 1092,11 So.2d 4. In State ex rel. Hodge v. Grace, supra, it was held that a former owner seeking to take advantage of the provisions of Act No. 161 of 1934, which amended Act No. 72 of 1928 and permitted the redemption of property adjudicated to the State for the amount of the taxes for the year in which the property was adjudicated, could not require the Register of the Land Office to recognize his right of redemption where the property had been previously conveyed by appropriate act of transfer to the Ponchartrain Levee District. But that decision was predicated on the fact that the Levee District had acquired an absolute title from the Register of the Land Office, as the opinion clearly distinguishes the situation there obtaining from the case where the Levee District has failed to get a deed and it was recognized that, in the latter instance, the right of the former owner to redeem must prevail.
Then, too, it is pertinent to note at this point that the land grants contained in the various Levee District Acts have been revoked since 1924. This was decreed by the Supreme Court in State ex rel. Fitzpatrick v. Grace, supra, where it was held that Act No. 237 of 1924 impliedly repealed the previous land grants. And, in Airey v. Tugwell, 197 La. 982, *Page 789 3 So.2d 99, the court reaffirmed this ruling and held that a former owner of lands situated within a levee district had the right to redeem, under Act No. 47 of 1938, where the deed from the Register of the State Land Office to the levee district was executed subsequent to the passage of Act No. 237 of 1924.
Applying the law and the jurisprudence to the facts of the case at bar, it will be at once seen that, unless it can be said that Act No. 99 of 1924 had the effect of withdrawing the lands situated within the "Bohemia Spillway" from the operation of the general land laws and of revoking plaintiffs' right to redeem under Act No. 41 of 1912, Act No. 72 of 1928 and the subsequent redemption laws (particularly Act No. 47 of 1938), plaintiffs have acquired a valid title to the property in controversy.
Therefore, the main inquiry addresses itself to a consideration of the provisions of Act No. 99 of 1924. That act, as stated in the main opinion, is a special law which authorizes and directs the Orleans Levee District to construct a spillway or waste wier on the east bank of the Mississippi River in the Parish of Plaquemines to be located and designed, according to plans to be approved by the State Board of Engineers and the Mississippi River Commission, for the purpose of reducing the flood levels of the Mississippi River and to better protect the city of New Orleans from danger of overflow by the high waters of the river. (See section 1.) In section 2, the Orleans Levee District is authorized to acquire, by purchase, donation or expropriation, all lands and other property necessary for the construction and maintenance of the spillway and the Board is further authorized to receive any donations which may be made to it by the United States Government or any of the levee districts of the State which will be benefited by the spillway. This section contemplates that the levee board shall not only have the right to obtain private lands by purchase or expropriation but that it shall also acquire all public lands within the project by donation or purchase. This seems manifest to me because section 3 of the statute deals exclusively with the acquisition of private lands by the Orleans Levee District and requires that, as a condition precedent to taking possession of any property within the project, it shall obtain, by purchase or expropriation, all of the lands "privately owned within the area covered by the proposed plan * * *."
The provisions of section 5 of the Act, which are quoted in full in the main opinion, are conflicting and ambiguous. This section declares that the Orleans Levee District is authorized and directed to arrange with the Grand Prairie Levee District and the Plaquemines Parish East Bank Levee District "whereby the bonded and other indebtedness of said two levee districts, as to the area to be affected by the proposed works, shall be acquired by said Orleans Levee District, [to] be paid for by it, at values as of June 17, 1924, and cancelled * * *." While it is quite obvious to me that this provision of the statute was intended to require that the Orleans Levee District assume the bonded indebtedness of the two levee districts of Plaquemines Parish with respect to the area which was to be used by the Orleans Levee District in the construction, operation and maintenance of the project, the language used in the expression of this idea could have been more direct and concise. In addition, the section also indicates an intention that the lands belonging to the Grand Prairie and Plaquemines Levee Districts, which were to form part of the Spillway, were to be acquired from those districts by the Orleans Levee District and that the latter should pay for those lands "at values as of June 17, 1924." True enough, the language employed to express this intention is not clear but, when the provisions of the Act are considered as a whole, it becomes quite plain to me that this interpretation is inescapable.
Section 7 of the law repeals all laws or parts of laws in conflict therewith and it is further declared that "As this act is designed to meet an emergency, it shall be broadly construed."
A consideration of all the foregoing provisions of the Act has convinced me that it was the intention of the Legislature to withdraw all of the lands situated within the project, to which the State or any of its subdivisions had title, from the provisions of the general land laws of the State and to revoke any rights which had been accorded by law to former owners of any property situated within the confines of the Spillway, to redeem their lands, where the time for redemption prescribed by the *Page 790 
Constitution had expired. In other words, I think that the Legislature intended that any public lands in the Spillway, which, under the provisions of the levee district grants, were owned either absolutely by the Grand Prairie and Plaquemines East Bank Levee Districts or as to which the levee districts had the right to acquire title by certificate to be issued by the Register of the Land Office, were to be transferred by those levee districts to the Orleans Levee District. If this is correct, then it is manifest that this special law had the effect of repealing the redemption rights granted to former owners by Act No. 41 of 1912, insofar as it concerned the lands situated within the confines of the project which had been adjudicated to the State for non-payment of taxes and as to which the Grand Prairie and Plaquemines East Bank Levee Districts had the right to acquire from the State an absolute title by application to the Register of the Land Office for an appropriate certificate.
If this be so, then what effect did the passage of Act No. 237 of 1924 have with respect to these lands? It is my firm opinion that that statute, which regulates the manner and terms on which property adjudicated for unpaid taxes may thereafter be sold, did not repeal the special provisions of Act No. 99, which was passed at the same session of the Legislature. The fact that the Supreme Court has held in State ex rel. Fitzpatrick v. Grace that the prior grants to the levee districts were repealed, by implication, in Act No. 237 of 1924 does not detract from this conclusion because the court did not have before it for consideration the provisions of this special statute which deals with particular lands devoted to a special purpose. To hold otherwise would be to attribute to the Legislature an utter lack of consistency of purpose.
Nor can I conceive that Act No. 72 of 1928 and the subsequent redemption acts, particularly Act No. 47 of 1938, under which plaintiffs claim to have derived their right to redeem, can be regarded as giving to the plaintiffs greater rights of redemption than they had under Act No. 41 of 1912, insofar as the lands situated within the confines of the Bohemia Spillway are concerned. Those general laws merely provide a method for the redemption of lands by tax debtors at a reduced price and on the installment plan. They do not grant greater rights of redemption than were given by Act No. 41 of 1912, except with regard to property adjudicated to a political subdivision of the State. They cannot be considered as effecting a repeal of the provisions of Act No. 99 of 1924 which is a special law pertaining to a special subject matter.
Hence, it is my opinion that, while the title to the lands in question is presently in the State, the title of the State is not absolute and indefeasible because Act No. 99 of 1924 clearly contemplates that the Orleans Levee District should acquire this title and own all the property situated within the Bohemia Spillway. The fact that the officials of the Orleans Levee District have not gone through the mechanics of obtaining a title from the State by having the State Register to execute a certificate in favor of the Grand Prairie Levee District cannot assist the plaintiffs in any way, since they, as plaintiffs in a petitory action, must show that they have a title in themselves. The redemption deed which they have obtained from the State is, in my opinion, wholly invalid and, therefore, their action cannot be maintained.
For these reasons, I respectfully concur in the decree.